IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-CV-276-D-BM

| | |
|---|---|
| NORTH CAROLINA GREEN PARTY, ANTHONY NDEGE, MICHAEL TRUDEAU, MATTHEW HOH, SAMANTHA WORRELL, SAMANTHA SPENCE, K. RYAN PARKER and AARON MOHAMMED,<br><br>　　　　　　Plaintiffs<br><br>　　v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS and DAMON CIRCOSTA, STELLA ANDERSON, JEFF CARMON, STACY EGGERS IV, TOMMY TUCKER, and KAREN BRINSON BELL, in their official capacities as members or employees of the North Carolina State Board of Elections,<br><br>　　　　　　Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANTS** |

# TABLE OF CONTENTS

Introduction and Factual Background………………………………………………... 1

Argument…………………………………………………………………………… 3

    I.    The DSCC Is Not Entitled to Intervene as of Right Under Rule 24(a)(2)…. 3

        A. The DSCC Does Not Have a Cognizable Interest in the Outcome of This Case ……………………………………………………………. 4

        B. Disposition of This Case Will Not Impair Any Cognizable Interest the DSCC Now Asserts Because the NCSBE Adequately Represents Those Interests …………………………………………………… 8

    II.    The Court Should Deny the DSCC's Request for Permissive Intervention... 11

Conclusion………………………………………………………………………….. 11

Certificate of Service

Certificate of Compliance

Plaintiffs North Carolina Green Party ("NCGP"), Anthony Ndege, Michael Trudeau, Matthew Hoh, Samantha Worrell, Samantha Spence, K. Ryan Parker and Aaron Mohammed (collectively, "Plaintiffs") respectfully submit this Memorandum in opposition to the Motion to Intervene as Defendants that the Democratic Senatorial Campaign Committee and North Carolina Democratic Party (together, "DSCC") filed on July 17, 2022. (ECF No. 15.)

**INTRODUCTION AND FACTUAL BACKGROUND**

In the Memorandum submitted in support of its motion (ECF No. 16) (hereinafter, "Mem."), the DSCC asserts that there is a "fundamental flaw" in Plaintiffs' case and, without further ado, it embarks on a lengthy discursion that relies heavily on innuendo and little on actual fact, in an attempt to convince the Court that there is "significant" evidence of "fraud" in NCGP's petitions. (Mem. at 1.) As the Court inquired during the July 18, 2022 status conference it held, "Where's the proof?" Defendant North Carolina State Board of Elections ("NCSBE") still has not provided it 58 days after NCGP submitted its petitions, and the DSCC likewise fails to provide it here. As the DSCC is well aware, however, its unsubstantiated allegations alone cause Plaintiffs extreme prejudice because they are widely reported in the media and amplified by NCSBE itself, at a time when NCSBE purports to be conducting a neutral investigation. (Mem. in Supp. of Pl. Emerg. Mot. for Prel. Inj. (ECF 30) ("Pl. Mem.") at 2-3.)

The fundamental facts of this case are not in genuine dispute. At all times relevant to this matter, NCGP's petitions have contained far more valid signatures, as verified by county boards of elections, than the statutory requirement. On June 30, 2022, when NCSBE voted not to certify NCGP as a new political party, NCSBE confirmed that NCGP's petitions contained 15,953 county board-validated signatures – or 2,088 more valid signatures than the statutory requirement. (*Id.* at 1.) At present, after conducting a wide-ranging investigation into NCGP's petitions and its petition

1

drive, which NCSBE's own counsel characterized as "unprecedented," NCSBE still credits NCGP with 15,650 valid signatures – or 1,785 more than the statutory requirement. *See* North Carolina State Board of Elections, Petition Search (North Carolina Green Party), *available at* https://vt.ncsbe.gov/PetLkup/PetitionResult/?CountyID=0&PetitionName=NORTH%20CAROLINA%20GREEN%20PARTY (accessed July 28, 2022). These facts alone discredit the DSCC's unsubstantiated allegations.

Now the DSCC seeks to intervene in this matter so that it will have a platform to repeat these unsubstantiated allegations regardless of its lack of supporting evidence. This is nothing more than a distraction from the undisputed fact that NCGP has fully complied with all applicable requirements to qualify for the ballot under North Carolina law. It is an attempt to divert attention from the clear violation of Plaintiffs' constitutional rights arising from NCSBE's unlawful refusal to certify NCGP as a new political party, as it is required to do "forthwith" under N.C. GEN. STAT. § 163-96(a)(2).

Indeed, just one day ago, the Guilford County Board of Elections – one of the counties against which the DSCC's attorneys filed a complaint with NCSBE – announced that there is "no merit to the complaint." *See* Paul B. Johnson, *Guilford Cited in Ballot Access Complaint*, The High Point Enterprise (July 27, 2022) *available at* https://news.yahoo.com/guilford-cited-ballot-access-complaint-064800099.html ("A leader of the Guilford County Board of Elections office said that there's no merit to the complaint."). That county board of elections "reviewed the instances cited in the complaint" and found that "[n]othing was done improperly." *Id.*

Unlike the DSCC, Plaintiffs do not rely on unsubstantiated allegations but undisputed facts supported by a robust evidentiary record demonstrating that Democratic operatives engaged in a widespread campaign to harass and pressure North Carolina voters into requesting the removal of

2

their names from NCGP's petitions. These facts are set forth in the Amended Complaint and they are amply supported by the 17 sworn declarations submitted in support of their Emergency Motion for Preliminary Relief, together with the exhibits attached thereto. (ECF Nos. 28-1 – 28-17.) Further, the facts and evidence in the record demonstrate that the DSCC has only pursued one interest in this matter: to deny NCGP ballot access despite its compliance with North Carolina law. That is not a cognizable interest, and it cannot support the DSCC's attempt to intervene as a defendant. The DSCC's motion should be denied.

## ARGUMENT

### I. The DSCC Is Not Entitled to Intervene as of Right Under Rule 24(a)(2).

To intervene as a matter of right under Rule 24(a)(2), "the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Assoc.*, 646 F.2d 117 (4th Cir.1981)). The party seeking to intervene "bears the burden of demonstrating to the court a right to intervene." *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997). Failure to satisfy even one of the requirements results in denial of intervention by right. *See NAACP v. New York*, 413 U.S. 345, 369 (1973).

"When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Com. of Va. v. Westinghouse Elec. Corp.,* 542 F.2d 214, 216 (4th Cir. 1976). Additionally, if the government is already a party to the

3

case, then the proposed intervenors must "mount a strong showing of inadequacy [of representation by the government]." *Stuart v. Huff,* 706 F.3d 345, 352 (4th Cir. 2013).

Here, the evidence that is already in the record confirms that the DSCC does not have a cognizable interest in this case, but only an interest in interfering with Plaintiffs' exercise of their First Amendment rights by preventing NCGP from appearing on the ballot despite its compliance with all applicable requirements under North Carolina law. The DSCC's motion should be denied on that basis alone. Further, to the extent that the DSCC now asserts interests that courts have recognized as grounds for intervention, disposition of this action will not impair any such interest, because NCSBE adequately represents those interests. The DSCSS's motion should be denied on that basis too. Indeed, the evidence supports the conclusion that NCSBE is adequately representing the DSCC's sole, non-cognizable interest in squelching its political competition by denying NCGP ballot access without any basis under state law, because that is what NCSBE has done to date.

### A. The DSCC Does Not Have a Cognizable Interest in the Outcome of This Case.

The DSCC asserts a litany of "strong interests" it claims to have in this case in an attempt to support its putative right to intervene, (Mem. at 16), but the DSCC is already on record confirming that it has just one interest: the DSCC seeks to deny NCGP's right to appear on North Carolina's November 8, 2022 general election ballot, even though NCGP has complied with all applicable requirements under state law, because the DSCC fears that NCGP "takes votes" from Democrats. (E.g., Gilchrist Decl. (ECF No. 28-6), Ex. A; Harney Decl. (ECF No. 28-8), Ex. A; Hoh Decl. (ECF No. 28-3), Ex. A; Ndege Decl. (ECF No. 28-1) ¶ 28.) That is not a "protectable interest" in the outcome of this case, *Teague v. Bakker*, 931 F.2d 259, 261-62 (4th Cir. 1991), and the DSCC cites no case that recognizes such an interest. There is none.

4

Case 5:22-cv-00276-D-BM   Document 45   Filed 07/28/22   Page 6 of 16

Thus, while the DSCC broadly asserts that political parties are "routinely granted intervention in cases concerning election rules and procedures," this case stands in stark contrast from those that the DSCC cites. (Mem. at 17 & n.14.) Here, unlike those cases, Plaintiffs have presented a robust evidentiary record in support of their Emergency Motion for Preliminary Injunction, including documentary evidence and sworn statements supported by audio and video recordings, which confirms that the DCSS engaged in a wide-ranging effort to pressure North Carolina voters into removing their names from NCGP's petitions. (Pl. Mem. at 3-5.)

The DSCC conspicuously fails to acknowledge Plaintiffs' evidence, much less to dispute it, and with good reason: the evidence makes plain that contrary to the assertions the DSCC now makes, it has never had any interest in "ensuring a fair competitive playing field," protecting voters from "misleading petition schemes," or ensuring that "North Carolina's election laws [are] applied competently and fairly." (Mem. at 18.) Rather, in the words of the Democratic operatives who repeatedly contacted NCGP petition signers by text messages, telephone calls and unannounced visits to their homes, the DSCC's sole interest is as follows:

> <u>If the Green Party is on the ballot it will give Republicans a huge advantage that will help them win in North Carolina in 2022 and 2024.</u> In past elections we've seen that <u>the Green Party takes votes from Democrats, which helps Republicans win.</u> With abortion rights in the balance, <u>we can't afford to give Republicans more of an advantage.</u> Are you interested in asking the elections board to have your name removed from this petition? … I understand this seems like a lot of effort, but <u>we want to make sure the Democratic candidates have the best chance to win this November</u>, and this could make a big difference. Would you be willing to have your name removed?

(Gilchrist Decl., Ex. A; Harney Decl., Ex. A; Hoh Decl., Ex. A (emphasis added).)

Unlike the DSCC's court filings, which are rife with unfounded and unsubstantiated allegations of "fraud," these operatives alleged no impropriety in connection with NCGP's petitions and they expressed no concern for the integrity of North Carolina's ballot. They wanted only one thing: to deny NCGP ballot access by pressuring voters who signed NCGP's petitions to

5

request their removal from the petitions. And they even provided those voters who acquiesced with a means of doing so electronically, by signing a document available on the DocuSign platform. (Ebadi Decl. (ECF No. 28-5) ¶ 5.)

None of the cases on which the DSCC purports to rely recognize the right of a political party, or any other entity or individual, to intervene as a defendant in a case challenging the constitutionality of a state election law for the purpose of preventing a political competitor from participating in an election even if the competitor complies with the challenged law. There is no such case because there is no such right. The DSCC asserts, for instance, that it has an interest in this case based on the "harm to its election prospects" that might result from NCGP's inclusion on the ballot, (Mem. at 18 (quoting *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006)), but the Court in *Benkiser* found that the Texas Democratic Party had *standing as a plaintiff* to file its action based on that harm – not a cognizable interest that supported its intervention as a defendant to defend the constitutionality of a statute that the state was already defending. And here, unlike *Benkiser*, NCSBE is adequately defending the constitutionality of North Carolina's statutory scheme. *See infra* at Part I.B. *Benkiser* is therefore inapposite. *Benkiser* does not recognize that political parties have an interest in participating in elections free of competition from other political parties that are unconstitutionally denied ballot access.

The same is true of the other cases the DSCC cites in passing. (Mem. at 19 (citing *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990); *N.C. State Conf. of NAACP v. McCrory*, 997 F. Supp. 2d 322, 342 (M.D.N.C. 2014).) In *Schulz*, the state declined to defend the constitutionality of an election law the district court had enjoined. *See Schulz*, 44 F.3d at 52. The Court therefore recognized the standing of a political party to intervene for purposes of defending the statute based on the harm it would incur from "the

6

improper placing of an additional party" on the state's ballot. *Id.* at 53. Here, there is no danger the DSCC will incur that harm because NCSBE is defending North Carolina's statutory scheme, and NCSBE is better-situated than the DSCC to do so. *See infra* at Part I.B. In the event that NCSBE does not prevail here, such that NCGP is included on North Carolina's ballot, the DSCC will not incur the harm recognized in *Schulz* because NCGP's inclusion will not be improper.

Similarly, in *Fulani*, the Seventh Circuit recognized that a political party had standing as a plaintiff to challenge the constitutionality of a statutory scheme that permitted the party's competitors to appear on the ballot notwithstanding their failure to comply with the statutory scheme. *Fulani*, 917 F.2d at 1030-31. Like *Benkiser* and *Schulz*, however, *Fulani* did not recognize that the party would have an interest to intervene in a case as a defendant seeking to defend the constitutionality of a statute that the state itself was defending. Nor does *N.C. State Conf. of NAACP* recognize any such interest. *See N.C. State Conf. of NAACP*, 997 F. Supp. 2d at 342.

According to the DSCC, one court has "aptly summarized" the foregoing caselaw as recognizing that a political party "has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." (Mem. at 19 (quoting *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008)).) But *Hollander* merely confirms that these cases are inapposite here. Under the facts of this case, where NCSBE is adequately defending the constitutionality of North Carolina's statutory scheme, *see infra* at Part I.B, there is no danger that any "ineligible rival" will appear on the state's ballot. Therefore, the interest that *Hollander* and the other cited cases recognize is not implicated.

7

The other interests that the DSCC asserts fail for the same reasons. In cases where the state is defending the constitutionality of its statutory scheme, courts have not recognized that a political party's desire to avoid "expend[ing] [the] additional funds" necessary to compete in an election against a rival party that has qualified for the ballot is a cognizable interest that supports the party's intervention as a defendant. (Mem. at 19.) And to the extent that the DSCC asserts any cognizable interests, the NCSBE is better situated than the DSCC to protect them. *See infra* Part I.B. The Court should therefore deny the DSCC intervention because the DSCC has no cognizable interest in this case.

> **B.  Disposition of This Case Will Not Impair Any Cognizable Interest the DSCC Now Asserts Because the NCSBE Adequately Represents Those Interests.**

The Fourth Circuit has long recognized that when a proposed intervenor "has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented…." *Com. of Va.*, 542 F.2d at 216. To defeat that presumption, the proposed intervenor "must demonstrate adversity of interest, collusion, or nonfeasance" by the party who shares its interest. *Id.* Further, the Fourth Circuit has expressly concluded, in accordance with every other circuit that has ruled on the matter, that when a proposed intervenor "shares the same objective as a government party," the proposed intervenor bears an even heavier burden. *Stuart*, 706 F.3d at 351 (citations omitted). In such cases, the proposed intervenor "must mount a strong showing of inadequacy." *Id.* at 352.

The Fourth Circuit has explained the sound rationale behind the heavy burden that courts impose on parties such as DSCC, who seek to intervene in an action to defend the constitutionality of a state statute that the government is already defending:

> To start, it is among the most elementary functions of a government to serve in a representative capacity on behalf of its people. In matters of public law litigation that may

8

affect great numbers of citizens, it is the government's basic duty to represent the public interest. And the need for government to exercise its representative function is perhaps at its apex where, as here, a duly enacted statute faces a constitutional challenge. In such cases, the government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process. As the Supreme Court stated in the related standing context in *Diamond v. Charles*, "[b]ecause the State alone is entitled to create a legal code, only the State has the kind of direct stake" needed to defend "the standards embodied in that code" against a constitutional attack. 476 U.S. 54, 65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (internal quotation marks omitted).

*Id.* In such cases, the Fourth Circuit concluded, there is little need for the proposed intervenor to intervene as a defendant. *Id.* ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government."). Moreover, such intervenors "would greatly complicate the government's job," by compelling it "to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation." *Id.* Indeed, "the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view." *Id.* (quoting 6 *Moore's Federal Practice* § 24.03[4][a][iv][A] (3d ed.2011)).

Thus, to the extent that the DSCC now asserts an interest in "ensuring a fair competitive playing field," protecting voters from "misleading petition schemes," or ensuring that "North Carolina's election laws [are] applied competently and fairly," (Mem. at 18), its intervention is foreclosed by *Stuart*. NCSBE is already defending the constitutionality of North Carolina's ballot access scheme, and in so doing, NCSBE is defending the fairness and integrity of that statutory scheme and that it is applied competently and fairly – *i.e.*, the precise interests that DSCC seeks to defend if it is permitted to intervene. Moreover, the Fourth Circuit has expressly concluded that a governmental agency like NCSBE – not a private party like the DSCC – is best situated to protect such interests. *Stuart*, 706 F.3d at 351.

9

The recent decision in *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022), on which the DSCC relies, (Mem. at 22), does not alter this conclusion. In *Berger*, the Supreme Court narrowed the presumption of adequate representation *as applied against governmental parties* that seek to intervene as defendants. Indeed, the Court expressly distinguished *Berger* from the Fourth Circuit's precedent applying the presumption as applied against a private party like the DSCC. Acknowledging that lower courts continue to apply the presumption "in certain classes of cases," the Court reasoned:

> [N]one of these presumptions applies to cases like ours. For example, the Fourth Circuit has endorsed a presumption of adequate representation where a member of the public seeks to intervene to defend a law alongside the government. There, the Fourth Circuit has reasoned, a court may presume that legally authorized government agents will adequately represent the public's interest in its chosen laws. Here, by contrast, the legislative leaders are *among* those North Carolina has expressly authorized to participate in litigation to protect the State's interests in its duly enacted laws.

*Id.* at __ (emphasis original) (citations omitted). Thus, neither the holding nor the rationale of *Berger* is applicable here, where the DSCC seeks to intervene as a private party to defend the constitutionality of a statute that the state is already defending. The DSCC's reliance on that case is therefore misplaced. (Mem. at 22-23.)

The DSCC fails to make *any* showing that NCSBE is inadequate to the task of defending its asserted interests, much less the "strong showing" that is required of it here. *Stuart*, 706 F.3d at 352. The DSCC merely asserts that its interests are "related" to those that NCSBE seeks to protect, but not "identical." (Mem. at 23 (citation omitted).) Such a bald assertion, without more, is insufficient to sustain the DSCC's burden. To be sure, the DSCC may be "likely to disagree" with NCSBE if NCSBE eventually determines that NCGP's petitions are sufficient, (Mem. at 24), but that would not mean that NCSBE somehow failed to protect the DSCC's asserted interest in participating in a fair election in which North Carolina law is fairly and competently enforced. On

10

the contrary, because the DSCC acknowledges that NCSBE is "required to neutrally investigate and adjudicate" its allegations, (*id.*), such an outcome would ensure that the DSCC's asserted interests were adequately protected. The Court should therefore deny the DSCC intervention because NCSBE adequately represents any cognizable interest the DSCC now asserts.

## II. The Court Should Deny the DSCC's Request for Permissive Intervention.

The Court should deny the DSCC's motion for permissive intervention for the same reasons set forth above. The DSCC asserts that Plaintiffs "concede" that it has "a stake in this case," (Mem. at 25), but even if that were true it does not satisfy the requirements for intervention. There is no doubt that the DSCC wishes to deny ballot access to NCGP notwithstanding NCGP's compliance with all applicable requirements under North Carolina law – the evidence amply supports that conclusion – but that desire is not a cognizable interest that any court has recognized. Furthermore, to the extent that the DSCC now asserts interests that courts have recognized, NCSBE is not only capable of adequately protecting those interests, but better situated than NCSBE to do so. *See Stuart*, 706 F.3d at 351-52. Under these circumstances, the Court should exercise its broad discretion to deny permissive intervention. *See id*. at 351 (observing that "the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view.").

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion to Intervene as Defendants filed by the Democratic Senatorial Campaign Committee and the North Carolina Democratic Party.

11

Dated: July 28, 2022                    Respectfully submitted,

/s/Oliver B. Hall
Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
D.C. Bar No. 976463


/s/Pooyan Ordoubadi
Pooyan Ordoubadi*
Lopez-Cobb and Ordoubadi, PLLC
134 Salem Towne Court
Apex, NC 27502
Tel: (919) 695-5569
Fax: (919) 882-9797
Email: pooyan@LCOLEGAL.com
N.C. Bar No. 49438

*Counsel for Plaintiffs*

*Local Civil Rule 83.1(d) Counsel*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2022 the foregoing document was filed using the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Oliver B. Hall
Oliver B. Hall

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum in Opposition to Motion to Intervene as Defendants contains 3,643 words, based on the word count of the word processing system used to prepare it, and that the Memorandum thus complies with the Local Civil Rule 7.2(f).

/s/Oliver B. Hall
Oliver B. Hall

*Counsel for Plaintiffs*