IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| NORTH CAROLINA GREEN PARTY, ANTHONY NDEGE, MICHAEL TRUDEAU, MATTHEW HOH, SAMANTHA WORRELL, SAMANTHA SPENCE, K. RYAN PARKER AND AARON MOHAMMED,<br><br>    Plaintiffs,<br><br>    v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS,<br><br>    Defendant. | Case No. 5:22-cv-00276-D-BM |

**PROPOSED INTERVENORS' REPLY
IN SUPPORT OF THEIR MOTION TO INTERVENE**

# INTRODUCTION

In moving to intervene, Proposed Intervenors explained that the North Carolina State Board of Elections (NCSBE) could not adequately represent Proposed Intervenors' interests because it was "entirely possible the Proposed Intervenors will become adverse to the NCSBE as this litigation progresses." ECF No. 16 at 24. That is precisely what has occurred. On August 1, NCSBE voted to certify the North Carolina Green Party (NCGP) even though "[i]t is known that two collectors submitted numerous fraudulent" signatures on their behalf. Ex. 1 hereto. NCSBE further acknowledged that it "remains unknown . . . [w]hether fraudulent signatures were submitted by [] other contractors or petitioners paid by the Green Party" and "whether the two collectors [known to have committed fraud] submitted additional petition sheets that did not contain their name or initials." *Id.* NCSBE ignored these open questions and recognized the party over Proposed Intervenors' strenuous objections and their evidence of yet *more* fraud in NCGP's petition sheets. Ex. 2 hereto. This action breached NCSBE's statutory duty to "determine the sufficiency of the petitions filed with it," N.C. Gen. Stat. § 163-96(a)(2). But, as both Proposed Intervenors and NCSBE have argued, the proper forum for resolving such a state-law dispute is North Carolina Superior Court, not federal court.

Now, NCSBE appears ready to consent to relief in this case that would nullify North Carolina's "July 1, 2022 candidate filing deadline for new parties." ECF No. 51 at 4. NCSBE apparently intends to do so even though it *correctly* argues that this Court "should decline to exercise jurisdiction" and that "Plaintiffs cannot demonstrate a likelihood of success because the State Board has acted in full compliance with the law at all times, such that there has been no violation of Plaintiffs' rights." *Id.* at 4-5, 21-26. Nowhere does NCSBE explain how this Court may nullify a state statutory deadline when NCGP has not stated a claim, much less one cognizable in federal court, and where it is this Court's responsibility to decline jurisdiction.

1

In fact, the Court may *not* enter such a consent judgment. "'While parties can settle their litigation with consent decrees, they cannot agree to 'disregard valid state laws.'" *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 268 (8th Cir. 2011) (quoting *Perkins v. City of Chicago Heights*, 47 F.3d 212, 216 (7th Cir. 1995)). Thus, "[s]tate actors cannot enter into an agreement allowing them to act outside their legal authority, even if that agreement is styled as a 'consent judgment' and approved by a court." *Id.* at 270. NCSBE has explained that it has no authority to modify the July 1 candidate filing deadline, a statutory deadline. ECF No. 51 at 12. The Court may therefore enter the consent judgment only if doing so "is *necessary* to rectify a *violation of federal law*." *Id.* (quoting *Perkins*, 643 F.3d at 216). But as both NCSBE and Proposed Intervenors have argued, ECF No. 51 at 21-29; ECF No. 50 at 12-26, there is no actionable federal law violation here.

Proposed Intervenors therefore have significant protectable interests in this litigation, and NCSBE has now made clear that it cannot be relied upon to protect those rights. Proposed Intervenors' rights will be irreparably impaired if they are not permitted to protect them here, and the Court will be deprived of a critical argument about the limits of its consent judgment authority. Accordingly, the motion to intervene should be granted.

**ARGUMENT**

**I.     Proposed Intervenors are entitled to intervene as a matter of right under Rule 24(a)(2).**

To succeed on their motion for intervention as of right under Rule 24(a), Proposed Intervenors must show that (1) their application was timely; (2) they possesses as significant, legally protectable interest in the subject matter of the litigation; (3) the denial of intervention would significantly impair or impede their ability to protect that interest; and (4) their interest is not adequately represented by the existing parties. *DirecTV, Inc. v. Tolson*, No. 5:05-CV-784-

FL(2), 2006 WL 8447735, at *1 (E.D.N.C. June 21, 2006) (citing *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001); *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991)).

Plaintiffs do not dispute that Proposed Intervenors' motion was timely, and they offer only token argument that Proposed Intervenors lack significant protectable interests in this litigation. Plaintiffs' primary argument is that Proposed Intervenors should not be allowed to participate because NCSBE is already adequately protecting their interests—a view that, whatever its original merit, is no longer tenable.

### A. Proposed Intervenors have significant protectable interests in this litigation.

Proposed Intervenors have significant protectable interests in (1) ensuring a fair competitive playing field for their candidates; (2) conserving their party resources; (3) protecting their own voters from misleading petition schemes; (4) seeing North Carolina's election laws applied competently and fairly; and (5) in defending against accusations levied at them by Plaintiffs. *See* ECF No. 16 at 15-21.

NCGP does not address most of these interests, instead suggesting that Proposed Intervenors do not actually have a legitimate interest in ensuring that an unqualified political party does not take votes away from them, making it harder to elect their candidates. ECF No. 45 at 4. But many "courts have held that a candidate or his political party has standing to challenge the inclusion of an allegedly ineligible rival on the ballot, on the theory that doing so hurts the candidate's or party's own chances of prevailing in the election." *Hollander v. McCain*, 566 F. Supp. 2d 63, 68 (D.N.H. 2008) (collecting cases). Indeed, NCGP's own response brief and amended complaint acknowledge the concern among both Proposed Intervenors and their voters that NCGP may dilute their vote share despite not validly obtaining ballot access. *See* ECF No. 45 at 5; ECF No. 27 ¶ 49.

3

NCGP has no answer to the cases Proposed Intervenors cite. They note that *Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006)—which found a party suffered "harm to [the party's] election prospects" based on ballot access—concerned standing, rather than intervention. But standing, if anything, is a *higher* standard than showing a "significant protectable interest" and for that reason "standing case[s]" "inform[] our analysis of whether [] Proposed Intervenors have a sufficient interest under Rule 24(a)(2)." *N.C. State Conf. of NAACP v. Berger*, 970 F.3d 489, 503 (4th Cir. 2020), *aff'd on reh'g en banc*, 999 F.3d 915 (4th Cir. 2021), *rev'd on other grounds sub nom. Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022); *see also Ruiz v. Estelle*, 161 F.3d 814, 832 (5th Cir. 1998). The same is true of the Seventh Circuit's decision in *Fulanti v. Hogsett*, 917 F.2d at 1030-31 (7th Cir. 1990), which concluded that that a political party suffers injury where a state body "permit[]s the party's competitors to appear on the ballot notwithstanding their failure to comply with the statutory scheme."

Similarly, NCGP tries to distinguish *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994), by noting the intervenor and state defendant took divergent legal positions. ECF No. 45 at 5. But that is also now the case here. NCGP alternatively argues that even if the "NCGP is included on North Carolina's ballot, the [Proposed Intervenors] will not incur the harm recognized in *Schulz* because the NCGP's inclusion will not be improper." *Id.* at 6. But that argument does nothing more than assume the unassailability of NCGP's legal position. Proposed Intervenors believe NCSBE breached its statutory duty under N.C. Gen. Stat. 163-96(a)(2). The proper jurisdiction for that dispute is North Carolina state court.

NCGP offers little other argument that Proposed Intervenors do not have significant interests at play here, save to state that NCSBE "is adequately" defending its own behavior under "North Carolina's statutory scheme." ECF No. 45 at 7. But that view no longer makes sense where

4

Proposed Intervenors' interests have now very clearly "diverge[d] from the putative representative's interests in a manner germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015) (further discussing why an intervenor's interests may not be protected by a "governmental party"); *see generally* ECF No. 16 at 23-24.

> **B. Denying intervention will impair Proposed Intervenors' ability to protect their interests because NCSBE is not adequately protecting those interests.**

Proposed Intervenors' motion to intervene anticipated the possibility that they would "become adverse to the NCSCBE as this litigation progresses." ECF No. 16 at 24. And they explained that might occur specifically because NCSBE "could determine at a later date that [the NCGP's petition sheets] are sufficient for party certification" for reasons the Proposed Intervenors "are likely to disagree with." *Id.* That has now come to pass.

The divergence in Proposed Intervenors' and NCSBE's interests more than suffices to make the "minimal" showing that the latter will not adequately represent the former. *Teague*, 931 F.2d at 262. Indeed, intervenors need only show that an existing party's "representation of [their] interest *may* be inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). That inadequacy is now a certainty.

NCGP—which filed its response before NCSBE's vote to certify—argues that the "NCSBE is defending the fairness and integrity" of its actions under North Carolina statute to ensure "it is applied competently and fairly." ECF No. 45 at 10. But both NCSBE and NCGP now appear to agree that this Court should override North Carolina's statutes and place NCGP on the November 2022 ballot despite the passage of the July 1 deadline. Proposed Intervenors disagree. Rather, as explained above, the Court has no authority to nullify a statutory deadline in a consent decree in the absence of a valid federal claim. *E.g.*, *St. Charles Tower, Inc.*, 643 F.3d at 268; *Perkins*, 47 F.3d at 216. And as NCSBE itself has explained, NCGP and the other Plaintiffs have

suffered no legal injury and have failed to state a claim. ECF No. 50 at 4-5. Accordingly, the Court should decline to exercise jurisdiction here. Entering a consent judgment that nullifies a state statute in such circumstances is indisputably beyond the power of the federal courts. *St. Charles Tower, Inc.*, 643 F.3d at 268; *Perkins*, 47 F.3d at 216. Proposed Intervenors must be permitted to intervene to explain why such relief is inappropriate—denying them that opportunity will without question impair their protectable interests.

## II. Proposed Intervenors are also entitled to permissive intervention.

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention would be warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Permissive intervention must be "construed liberally in favor of intervention." *Thomas v. Andino*, 335 F.R.D. 364, 369 (D.S.C. 2020) (quoting *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012)).

NCGP offers minimal separate argumentation on the appropriateness of permissive intervention. Accordingly, for the reasons above and in Proposed Intervenors' memorandum in support of their motion to intervene, permissive intervention should be granted.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

Dated: August 2, 2022                    Respectfully submitted,

/s/ Narendra K. Ghosh
Narendra K. Ghosh, NC Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Telephone: 919.942.5200
nghosh@pathlaw.com

*Local Civil Rule 83.1(d) Counsel for DSCC and North Carolina Democratic Party*


Aria C. Branch*
Christopher D. Dodge*
Christina A. Ford*
Richard Medina*
Daniel Cohen*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
cdodge@elias.law
cford@elias.law
rmedina@elias.law
dcohen@elias.law

*Counsel for Proposed Intervenor-Defendants DSCC and North Carolina Democratic Party*

*\*Admitted by Special Appearance*

**CERTIFICATE OF SERVICE**

     I hereby certify that on this date, I caused the foregoing document to be filed and served on all counsel of record by operation of the CM/ECF system for the United States District Court for the Eastern District of North Carolina.

DATED: August 2, 2022
/s/ Narendra K. Ghosh
Narendra K. Ghosh, NC Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Telephone: 919.942.5200
nghosh@pathlaw.com