STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
COUNTY OF WAKE               SUPERIOR COURT DIVISION

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; and CARLTON PHILLIP JONES; <br><br> Plaintiffs, <br><br> v. <br><br> THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; JEFF CARMON, in his official capacity as BOARD MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; STACY "FOUR" EGGERS IV, in his official capacity as BOARD MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; TOMMY TUCKER, in his official capacity as BOARD MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; and THE NORTH CAROLINA GREEN PARTY, <br><br> Defendants. | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND PETITION FOR WRIT OF MANDAMUS** |

Plaintiffs the North Carolina Democratic Party and Carlton Phillip Jones, by counsel, for their Complaint for Injunctive and Declaratory Relief and Petition for Writ of Mandamus, allege as follows:

## INTRODUCTION

1. On June 30, the North Carolina State Board of Elections ("NCSBE") reported that it had discovered "obvious signs of fraud or irregularities" on the petition sheets that the North Carolina Green Party ("NCGP") submitted in seeking recognition as a new political party. Ex. A at 11. NCSBE pointed to identical handwriting and similar signatures, duplicate voters, and

deceased voters or voters who had long been removed from the registration list. *Id.* at 11. It explained that the number of "known questionable signatures" exceeded the 2,088 signature difference between the number of initially validated signatures NCGP had submitted and the statutory threshold. *Id.* at 17. NCSBE therefore concluded that further investigation was needed, "including subject interviews." *Id.*

2.      This is not the first time NCSBE has confronted election fraud that required extraordinary relief. In 2018, NCSBE ordered a new election in North Carolina's Ninth Congressional District after finding pervasive fraud that made it impossible to determine the precise number of affected votes. Order ¶¶ 152-53, *In the Matter of: Investigation of Election Irregularities Affecting Counties Within the 9th Congressional District*, NCSBE (Mar. 13, 2019).

3.      On July 14, NCSBE explained that its ongoing investigation of the fraud related to NCGP's petition submissions had found an "organized effort to falsify petition signatures" in support of NCGP's petition for recognition as a new political party. Ex. B at 7. In addition to the previously identified evidence, many individuals listed on NCGP's petition sheets had contacted county election boards to report that they had not signed the petition. *Id.* Other signatories reported that they were told by petition collectors that they were signing something else. *See, e.g.*, Ex. D ¶¶ 3-4, 6. State law required NCGP's circulators to "inform the signers of the general purpose and intent of the new party" N.C. Gen. Stat. § 163-96(b), but NCGP's instructions told circulators to *obscure* NCGP's ideology and leadership.[1]

4.      NCSBE's investigation into these issues was largely stymied by a lack of cooperation from the wrongdoers. The consultant who had originally hired two of the petition collectors who submitted known fraudulent petition sheets "refused to comply with the State

---

[1] N.C. Green Party, *Tips, Instructions, and Script for Ballot Access Petitioning* (Mar. 30, 2021), available for download at https://www.ncgreenparty.org/petition (last visited July 17, 2022).

Board's subpoena or speak with investigators," so the "[d]etails of [the] arrangement" remained "unknown." Ex. B at 10. Nor was NCSBE able to speak with the individuals known to have submitted fraudulent petitions. *Id.* As of that date, NCSBE still did not know if it had to identified all of the petition sheets those individuals collected. *Id.* And it still had not determined whether fraudulent signatures were submitted by any other collectors, or whether other signatories had been misled in signing the petition.

5.      On July 29, NCSBE's lead investigator declared under oath that "the matter is still an active criminal investigation." Ex. M ¶ 30. On August 1, NCSBE nevertheless certified NCGP as a new political party, without having ascertained the scope of the fraud or the number of affected petition sheets. It did so in violation of its statutory duty to "determine the sufficiency of petitions filed with it" before certifying a political party. *Id.* § 163-96(a)(2).

6.      Based on NCSBE's certification, NCGP has asked a federal court to order NCSBE to place its candidates on the ballot for the November 2022 election, even though NCGP missed the July 1 statutory deadline for selecting its candidates. *See N.C. Green Party v. N.C. State Bd. of Elections*, No. 5:22-cv-00276 (E.D.N.C.). NCSBE has said that it will consent to such relief based on its having certified NCGP as a political party. NCSBE told the federal court that NCSBE must finalize the design for absentee ballots by August 12 to allow sufficient time for printing and distribution in advance of the November election.

## PARTIES

7.      Plaintiffs North Carolina Democratic Party ("NCDP") and Carlton Phillip Jones bring this action on their own behalf. NCDP also brings this action on behalf of its members who are registered voters in North Carolina and intend to vote in the November 2022 general election and later elections.

8.      NCDP is a political party as defined in N.C. Gen. Stat. § 163-96.

9.      NCDP's purposes are: (i) to bring people together to develop public policies and positions favorable to NCDP members and the public generally, (ii) to identify candidates who will support and defend those policies and positions, and (iii) to persuade voters to cast their ballots for those candidates.

10.     NCDP has members in every county in North Carolina and has an interest in competing on a level playing field against other political parties in North Carolina.

11.     The unlawful inclusion of NCGP and its candidates on the ballot in violation of North Carolina law harms NCDP's electoral prospects because NCDP's candidates will have to compete with additional NCGP candidates, despite the fact that NCGP did not properly qualify as a party under North Carolina law. In addition, the unlawful inclusion of NCGP and its candidates on the ballot will require NCDP to divert and expend additional funds and resources to combat the effects of NCGP's presence on the ballot—funds and resources that it would otherwise elsewhere.

12.     Plaintiff Carlton Phillip Jones is a registered North Carolina voter residing in Wake County, North Carolina. Jones is registered as a member of NCDP.

13.     Defendant NCSBE is an agency responsible for the regulation and administration of elections in North Carolina.

14.     Defendant Damon Circosta is the Chair of the NCSBE. Mr. Circosta is sued in his official capacity.

15.     Defendant Stella Anderson is the Secretary of the NCSBE. Ms. Anderson is sued in her official capacity.

16.     Defendant Jeff Carmon is a Board Member of the NCSBE. Mr. Carmon is sued in his official capacity.

17.     Defendant Stacy "Four" Eggers IV is a Board Member of the NCSBE. Mr. Eggers is sued in his official capacity.

18.     Defendant Tommy Tucker is a Board Member of the NCSBE. Mr. Tucker is sued in his official capacity.

19.     Defendant the North Carolina Green Party ("NCGP") is an affiliate of the Green Party of the United States. On August 1, NCSBE certified NCGP as a political party as defined in N.C. Gen. Stat. § 163-96. This action challenges that certification.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction of this action under General Statutes § 163-22(*l*), because this is a petition for judicial review of a decision of NCSBE.

21.     Alternatively, this Court has jurisdiction of this action under Article 4 of Chapter 150B of the General Statutes, because this is a petition for judicial review of a final decision in a contested case.

22.     This Court also has jurisdiction over this action as a declaratory judgment action pursuant to Article 26 of Chapter 1 of the General Statutes.

23.     Plaintiffs have a direct cause of action to allege injury to their free speech and associational rights under the North Carolina Constitution. *See Corum v. Univ. of N.C. Through Bd. of Governors*, 330 N.C. 761, 783, 413 S.E.2d 276, 290 (1992).

24.     Alternatively, this Court has jurisdiction to issue a writ of mandamus or mandatory injunction under *Lloyd v. Babb*, 296 N.C. 416, 251 S.E.2d 843 (1979).

25.     Under General Statutes § 163-22(*l*), the exclusive venue for this action is Wake County Superior Court.

## FACTUAL ALLEGATIONS

**A.    Overview of the New Party Petition Process**

26.    To form a new, recognized political party under North Carolina law, the party's organizers must collect petitions which are "signed by registered and qualified voters in [North Carolina] equal in number to one-quarter of one percent (0.25%) of the total number of voters who voted in the most recent general election for Governor." N.C. Gen. Stat. § 163-96(a)(2).

27.    In obtaining petition signatures for a new political party, "the organizers and petition circulators shall inform the signers of the general purpose and intent of the new party." *Id.* § 163-96(b). Courts have concluded that this disclosure requirement is an "additional burden[] on new political parties in gathering signatures, and that for this reason, "new political parties have an initial signature requirement lower than the signature requirement for an unaffiliated candidate." *Buscemi v. Bell*, 964 F.3d 252, 265 (4th Cir. 2020) (citing N.C. Gen. Stat. § 163-96).

28.    The organizers must file the petitions they have collected from voters in each county with the relevant county board of election by 5:00 p.m. on "the fifteenth day preceding the date the petitions are due to be filed with the State Board of Elections as provided in subsection [subdivision] (a)(2) of this section." N.C. Gen. Stat. § 163-96(c).

29.    Upon receiving petitions from organizers, the chair of the each county board of elections must: (1) "examine the signatures on the petition and place a check mark on the petition by the name of each signer who is qualified and registered to vote in his county," (2) attach a signed certificate to the petition stating that "the signatures on the petition have been checked against the registration records" and indicating the number found "qualified and registered to vote in his county," and (3) return each petition and certificate to the organizers. *Id*. Such verification "shall be completed within two weeks from the date such petitions are presented." *Id.*

30.    The organizers must then file all the petitions they have collected, and which have

- 6 -

been verified by the county boards, with the NCSBE by "the first day of June preceding the day on which is to be held the first general State election in which the new political party desires to participate." *Id.* § 163-96(a)(2).

31.    NCSBE then "shall forthwith determine the sufficiency of petitions filed with it and shall immediately communicate its determination to the State chair of the proposed new political party." *Id.*

**B.    The NCGP gathers and submits petitions.**

32.    The NCGP "cease[d] to be a political party" after the 2020 general election because its candidates did not obtain "at least two percent (2%) of the entire vote cast in the State for Governor or for presidential electors." N.C. Gen. Stat. § 163-97 (incorporating N.C. Gen. Stat. § 163-96(a)(1)).

33.    To become a recognized political party again, NCGP needed to comply with the statutory requirements for the formation of a new political party. Based on the number of votes in the 2020 gubernatorial election, these requirements meant that NCGP needed to gather at least 13,865 valid petition signatures from qualified, registered voters. *Id.* § 163-96(a)(2).

34.    NCGP was required to, and did, file the petitions it had gathered with the relevant county boards of election by 5:00 p.m. on May 17, 2022. *Id.* § 163-96(c).

35.    NCGP was then required to file its petitions with NCSBE by noon on June 1. *Id.* § 163-96(a)(2).

36.    NCGP submitted a total of 22,521 signatures, of which 15,953 were initially validated by county boards and sent to NCSBE for review. Ex. A at 10.

- 7 -

**C.    County Boards begin to uncover fraud in connection with NCGP's petitions.**

37.    Starting in early May, "several [County Boards of Election] alerted the NCSBE of irregularities identified during review of petitions" and NCSBE "opened an investigation" into the petitions on its own initiative. Ex. A at 11.

38.    NCSBE found "[n]umerous petition pages" with "obvious signs of fraud or irregularities," including the "[s]ame handwriting throughout and similar signatures," "[n]umerous lines with incomplete information, or where name, address, or date of birth was crossed out," "partial dates of birth," and "[d]uplicate voters." *Id.* at 12. NCSBE also found signatures from "[d]eceased or long-removed voters" and pages that "identif[ied] a long-ago chair for the party." *Id.*

39.    NCSBE's investigation further revealed that NCGP employed several outside vendors to collect signatures and paid them per signature, including two collectors who collected 1,113 signatures in the final week before NCGP's petitions were due. Ex. B at 9. These two collectors were "known to have submitted numerous fraudulent signatures." *Id.*

40.    Indeed, those two collectors—who on information and belief were LaCourtney "A.C.E." Griffin (who signed petition forms as "ACE") and Joshua Mullins (who signed petition forms as "Josh M." or "Josh Mullins")—forged signatures detectable to any layperson's eye given the identical penmanship, as this small sample shows:

- 8 -

Josh M

THE UNDERSIGNED QUALIFIED REGISTERED VOTERS IN **Pitt** COUNTY HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY

TO BE NAMED NORTH CAROLINA GREEN PARTY AND WHOSE STATE CHAIRMAN IS ANTHONY NDEGE, RESIDING AT 1713 CHAPEL STREET, WINSTON-SALEM 27127,

AND WHO CAN BE REACHED BY TELEPHONE AT 336-577-1421.

IT IS ILLEGAL TO SIGN THE NAME OF ANOTHER PERSON TO A PETITION. (G. S. 163-221)

| BOE ONLY | Line No. | Print your name (must be printed legibly) | Residence Address and City/Town (no PO Box numbers) | ZIP code | Birth date (DD/MM/YYYY) | Signature |
|---|---|---|---|---|---|---|
| ✓ | 1 | Glynis Mullins | 100 Singletree Dr | 27834 | | |
| NR | 2 | Alice Stancil | 2001 Croyden Cir #B | 27834 | | |
| ✓ | 3 | Darlyn White | 107 E Catawba Rd | 27834 | | |
| ✓ | 4 | Beverly Wilkins | 4792 N NC 11 | 27812 | | |
| ✓ | 5 | Deborah Langley | 2541 Augustus St | 27828 | | |
| ✓ | 6 | Becky Walker | 3025 Taberna Dr | 27834 | | |
| ✓ | 7 | Angela Revis | 104 Blackwater Dr | 27530 | | |
| ✓ | 8 | Maurice Carter | 3140 Boardwalk Ln #9 | 27834 | | |
| ✓ | 9 | Shanique Streeter | 600 verdant Dr #04 | 27858 | | |
| ✓ | 10 | Daisha Foote | 573 W Hanrahan Rd | 27530 | | |
| ✓ | 11 | Tiffany Brown | 1183 Mulberry Ln #29A | 27858 | | |
| ✓ | 12 | Betty Cherry | 1000 Benjamin Dr | 27834 | | |
| ✓ | 13 | Dora Phillips | 3215 Summer Pl #12 | 27834 | | |
| ✓ | 14 | Melisa Everette | 529 Jonathan Pl | 27834 | | |
| ✓ | 15 | Frederick Givens | 224 Fairmont Ave | 27834 | | |

SUBMIT COMPLETED FORMS TO THE OFFICE OF (COUNTY) BOARD OF ELECTIONS.

Board of Elections use only

Page 6 of 32 pages    Batch No 7

RECEIVED
Date received / /
MAY 17 2022
BY:

Josh M

PETITION TO CREATE A NEW POLITICAL PARTY (NCGS § 163-96 (a)(2))

THE UNDERSIGNED QUALIFIED REGISTERED VOTERS IN **WAKE** COUNTY HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY

TO BE NAMED NORTH CAROLINA GREEN PARTY AND WHOSE STATE CHAIRMAN IS ANTHONY NDEGE, RESIDING AT 1713 CHAPEL STREET, WINSTON-SALEM 27127,

AND WHO CAN BE REACHED BY TELEPHONE AT 336-577-1421.

IT IS ILLEGAL TO SIGN THE NAME OF ANOTHER PERSON TO A PETITION. (G. S. 163-221)

| BOE ONLY | Line No. | Print your name (must be printed legibly) | Residence Address and City/Town (no PO Box numbers) | ZIP code | Birth date (DD/MM/YYYY) | Signature |
|---|---|---|---|---|---|---|
| ✓ | 1 | Corintha Evans | 2002 Manderleigh Dr | 27545 |  | |
| | 2 | | | | | |
| ✓ | 4 | Keyonte Cherry | 812 Terrastone Pl | 27519 | | |
| ✓ | | Demante Blue | 1663 Plexor Ln | 27545 | | |
| ✓ | 5 | Shaneeka Bell | 1131 Cannonball Run #301 | 27545 | | |
| ✓ | 6 | Jacob Green | 2830 Manorcrest Ct #231 | 27609 | | |
| ✓ | 7 | Dandre Griffin | 5800 Peacenest Dr | 27610 | | |
| ✓ | 8 | Eboni Young | 506 Glenbrook Dr | 27610 | | |
| ✓ | 9 | Deosia Goodman | 5324 Baywood forest Dr | 27545 | | |
| ✓ | 10 | Summer Hardin | 7837 Harps Mill Woods Run | 27615 | | |
| ✓ | 11 | Karrin Kennard | 2513 Shepherd Valley St | 27610 | | |
| ✓ | 12 | Lofton Woods | 2301 Fox Ridge Manor Rd | 27610 | | |
| ✓ | 13 | Tajasia Pitts | 410 montview Way | 27545 | | |
| ✓ | 14 | Camryn Hunter | 404 Little Acres Dr | 27545 | | |
| | 15 | Nysil Thomas | 2253 Ballston Pl | 27545 | | |

SUBMIT COMPLETED FORMS TO THE OFFICE OF (COUNTY) BOARD OF ELECTIONS.

- 9 -



**PETITION TO CREATE A NEW POLITICAL PARTY (NCGS § 163-96 (a)(2))**

THE UNDERSIGNED QUALIFIED REGISTERED VOTERS IN _Nash_ COUNTY HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY

TO BE NAMED NORTH CAROLINA GREEN PARTY AND WHOSE STATE CHAIRMAN IS ANTHONY NDEGE, RESIDING AT 1713 CHAPEL STREET, WINSTON-SALEM 27127,

AND WHO CAN BE REACHED BY TELEPHONE AT 336-577-1421.

IT IS ILLEGAL TO SIGN THE NAME OF ANOTHER PERSON TO A PETITION. (G. S. 163-221)

| BOE ONLY | Line No. | Print your name (must be printed legibly) | Residence Address and City/Town (no PO Box numbers) | ZIP code | Birth date (DD/MM/YYYY) | Signature |
|---|---|---|---|---|---|---|
| ✓ | 1 | Bridgette Waters | 601 Brunswick Dr | 27856 | | |
| ✓ | 2 | Jasmine Williams | 508 Western Ave | 27856 | | |
| | 3 | Tanisha Davis | 2541 Campground RD | 27856 | | |
| ✓ | 4 | Larthie Harris | 300 Richardson Ct Nashville | 27856 | | |
| ✓ | 5 | Joshua White | 421 Paul St. | 27603 | | |
| | 6 | Jesus Spight | 246 Regency Dr. | 27856 | | |
| ✓ | 7 | Tracey McClary | 260 Regency | 27856 | | |
| | 8 | Curtis Staten | 323 AVIATION AVE | 27856 | | |
| ✓ | 9 | Elaine Richardson | 3842 Wiggins RD Spring Hope | 27882 | | |
| | 10 | Maurice Spight | 901 Brake St #A | 27856 | | |
| ✓ | 11 | Sheda Vick | 613 Jackson Way | 27856 | | |
| ✓ | 12 | Tayla Hart | 123 Circle Dr. | 27856 | | |
| | 13 | | | | | |
| | 14 | | | | | |
| | 15 | | | | | |

SUBMIT COMPLETED FORMS TO THE OFFICE OF (COUNTY) BOARD OF ELECTIONS.

Board of Elections use only

Page _17_ of _29_ pages    Batch No _5_    Date received ___/___/___

---



**PETITION TO CREATE A NEW POLITICAL PARTY (NCGS § 163-96 (a)(2))**

THE UNDERSIGNED QUALIFIED REGISTERED VOTERS IN _Durham_ COUNTY HEREBY PETITION FOR THE FORMATION OF A NEW POLITICAL PARTY

TO BE NAMED NORTH CAROLINA GREEN PARTY AND WHOSE STATE CHAIRMAN IS ANTHONY NDEGE, RESIDING AT 1713

AND WHO CAN BE REACHED BY TELEPHONE AT 336-577-1421.

IT IS ILLEGAL TO SIGN THE NAME OF ANOTHER PERSON TO A PETITION. (G. S. 163-221)

| BOE ONLY | Line No. | Print your name (must be printed legibly) | Residence Address and City/Town (no PO Box numbers) | ZIP code | Birth date (DD/MM/YY) | Signature |
|---|---|---|---|---|---|---|
| | 1 | Carolyn J. Tillman | 3006 Skybrook Ln | 27703 | | Carolyn J Tillman |
| | 2 | Shay Jon Shyu | 7250 Hwy 751 Apt 227 | 27707 | | |
| | 3 | Kamilah Webb | 105 Laurel Mor Way | 27703 | | Kamilah Webb |
| | 4 | John Kavanaugh | 312 Hocutt RD Durham | 27703 | | John Kavough |
| | 5 | Sandra Nunelson | 1913 Fidelity Dr Durham | 27703 | | Sandy Nun |
| | 6 | Kendall Small | 1400 E Cornwallis RD Apt 400 | 27713 | | Kendall Small |
| | 7 | Wanda Jones | 1804 Contadon Dr Durham | 27703 | | Wand Jone |
| | 8 | Joel Marcus | 1022 Perseus St Durham NC | 27701 | | Joel Marcus |
| | 9 | Gary Person | 801 E Woodcroft Pkwy Apt 114 | 27713 | | |
| | 10 | Amina D'Agaro | 610 W Morgan St Apt 228 | 27701 | | |
| | 11 | Jacquelyn Ingram | 226 Curtis St Durham | 27707 | | Jacquelyn Ingram |
| | 12 | Camrin Johnson | 1 Duke university East Campus Apt Rutsbend in Jac | 27708 | | |
| | 13 | Cotton Cunningham | | | | |
| | 14 | Adedayo Adekunji | 5302 Danube LN Durham NC | 27704 | | Adedayo A. Aie |
| | 15 | Ashlie McCray | 1622 Pine Valley Dr Durham | 27712 | | |

SUBMIT COMPLETED FORMS TO THE OFFICE OF (COUNTY) BOARD OF ELECTIONS

IN PERSON

MAY 1 8 2022

Board of Elections use only

Page _4_ of _5_ pages    Batch No _30_    Date received

DURHAM

- 10 -

41. These sheets reflect only a small sample of petitions submitted by Griffin and Mullins—and initially credited by various County Boards of Election—on behalf of NCGP. *See, e.g.*, Ex. C at Ex. B.

**D. NCSBE's attempts to investigate the fraud were stymied by lack of cooperation from key players engaged by NCGP; nevertheless, in the process, NCSBE discovered even more issues.**

42. While NCGP had submitted 2,088 more county-validated signatures to the NCSBE than were required to achieve certification, NCSBE's preliminary investigation of the fraud determined that the number of "known questionable signatures exceeds the 2,088-signature threshold." Ex. A at 17. NCSBE therefore concluded on June 30 that determining the sufficiency of the petitions would "[r]equire[] further investigation, including subject interviews." *Id.*; *see also* Ex. N ¶ 25 ("[S]taff identified a universe of potentially fraudulent or otherwise invalid signatures that could exceed the number of signatures that the county boards had initially approved above the legal threshold for party recognition").

43. As NCSBE continued its investigation, it soon uncovered an additional issue—it "learned that not all county boards compared the petition signatures with the signatures on file for the voter in the State Board's petition software." Ex. B. at 6. That signature matching process is "how [the NCSBE] authenticate[s] the voter's identity." *Id.* at 5. On July 12, the NCSBE therefore instructed county boards to "complete the signature comparisons by July 29." *Id.* at 6.

44. Meanwhile, NCSBE concluded that "[n]umerous fraudulent signatures indicate [an] *organized effort to falsify petition signatures*." *Id.* at 7 (emphasis added). For example, "38 individuals contacted one county board of elections and stated they did not sign the petition[.]" *Id.*

45. NCSBE also contacted a small sample of voters on a petition sheet submitted by either Mullins or Griffin and found that of those contacted: 28 voters stated that they *did not sign the petition*; 15 voters were not sure or could not remember; eight voters stated that they did sign;

- 11 -

and four voters thought that they were signing something other than NCGP's petition for party recognition. *Id.*

46.     NCSBE's other efforts to investigate the scope of that "organized effort" were largely stymied. An Arkansas-based consultant that had initially hired Griffin and Mullins "refused to comply with the State Board's subpoena or speak with investigators." *Id.* at 10. The "[d]etails of [the] arrangement" were therefore "still unknown." *Id.*

47.     NCSBE investigators were also unable to speak with Griffin and Mullins themselves. Ex. B at 10. And while these individuals identified themselves as the circulator on many of the petition sheets they collected and NGCP later submitted—containing well over 1,000 signatures—as of July 14, NCSBE did "not know if all of their collected sheets identify them as being the collector." *Id.* at 9-10. In other words, there was no way to know what additional petition sheets Griffin and Mullins submitted without speaking to them.

48.     NCSBE's investigation also discovered that NCGP worked with Michigan-based First Choice Consulting, led by principal Shawn Wilmoth. Ex. B at 8. Both Mr. Wilmoth and First Choice Consulting were recently implicated in a massive petition-fraud scandal in Michigan that led to the disqualification of numerous Republican candidates, including the party's leading choice for Governor. *See, e.g.*, *How One Firm In A 'Wild West' Industry Upended the Michigan GOP Governor Race*, Bridge Michigan (June 16, 2022), https://www.bridgemi.com/michigan-government/how-one-firm-wild-west-industry-upended-michigan-gop-governor-race (last visited July 17, 2022).

49.     The problems with NCGP's petitions were not limited to forged signatures. While state law required NCGP's circulators to "inform the signers of the general purpose and intent of the new party" N.C. Gen. Stat. § 163-96(b), NCGP's instructions told circulators to obscure

NCGP's ideology and leadership.[2] For example, it included instructions such as: "Don't lead with [names of Green Party leaders] or Green ideology," "avoid ideology if possible," and "we don't have to say what exactly we have in mind."

50. Over 50 signatories later reported under penalty of perjury that they were misled by Green Party circulators. Ex. O at Ex. C. Plaintiff Jones, a Democratic Party member residing in Wake County, is among the many signatories who were misled. Mr. Jones was told he was signing a petition to legalize marijuana and was never told the petition had anything to do with the Green Party. *See* Ex. D ¶¶ 3-4, 6.

**E. At its June 30 meeting, NCSBE correctly declined to recognize NCGP as a new political party.**

51. Much of the foregoing information was known by NCSBE when it met to consider the sufficiency of NCGP's petitions on June 30: NCSBE had already been "alerted" to "irregularities" by various County Boards; opened its own investigation; detected "obvious signs of fraud or irregularities;" and identified Mullins and Griffin as individuals who submitted fraudulent signatures on a wide scale. *See* Ex. A at 11-17.

52. At the June 30 meeting, NCSBE staff presented the preliminary results of their investigation and recommended that NCSBE "[t]able consideration" of NCGP's petition to a "future date." June 30 Hr'g Video at 1:07:45.[3] As NCSBE staff explained, they "don't have the information at this point to make a decision on the sufficiency of the petitions." *Id.* at 1:28:52.

53. Board Chairman Damon Circosta explained that "[t]here's enough questions, including a criminal investigation, into the signature petition gathering process" and thus in "good

---

[2] N.C. Green Party, *Tips, Instructions, and Script for Ballot Access Petitioning* (Mar. 30, 2021), available for download at https://www.ncgreenparty.org/petition (last visited July 17, 2022).
[3] Video of NCSBE's June 30 meeting is available here: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2022-06-30/State%20Board%20of%20Elections%20Meeting-20220630%201300-1.mp4 ("June 30 Hr'g Video").

conscience" he could not vote to certify that day in view of the statutory requirement "to verify these signatures." *Id.* at 1:36:20-40. In response to a question from NCGP's counsel, the Chairman explained he "ha[d] questions" about signatures "sufficient in number" to not be able to confirm the adequacy of the petitions. *Id.* at 1:37:30-40.

54. Stacy "Four" Eggers IV, a Republican member of NCSBE, also stated he had a "significant number of questions as to whether the threshold was actually met based upon the [current] status" and "those questions at this point remain unanswered." *Id.* at 1:39:20; *see also id.* at 1:40:10 (expressing further "concerns as to whether, are these signatures all properly valid").

55. Consistent with Staff's recommendation, the Chairman suggested NCSBE "take no action" on the petitions so that it could consider the issue after further investigation. *Id.* at 1:41:15-30. Republican member Tommy Tucker nonetheless made a motion to take a vote on NCGP's petition, which Mr. Eggers seconded. NCSBE then voted 3-2 not to certify NCGP, concluding "the petitions were not yet shown to be sufficient under the law" but that "investigation is ongoing." NCSBE, *Amid Investigation, State Board Turns Down Green Party Recognition* (June 30, 2022), https://www.ncsbe.gov/news/press-releases/2022/06/30/amid-investigation-state-board-turns-down-green-party-recognition.

**F.     NCGP files a federal lawsuit.**

56. On July 14, NCGP filed a federal lawsuit against NCSBE alleging that NCSBE had violated federal law by not yet certifying NCGP as a political party. *See* Compl., *N.C. Green Party v. N.C. State Bd. of Elections*, No. 5:22-cv-00276-D-BM (E.D.N.C. filed July 14, 2022), ECF No. 1. Plaintiff moved to intervene in that lawsuit two days later, and that motion remains pending.

57. NCGP filed a motion for a preliminary injunction on July 21. *Id.*, ECF No. 28. NCSBE opposed NCGP's preliminary injunction motion. But NCSBE also indicted that, *if* NCSBE certified NCGP at its August 1 meeting, NCSBE would not "oppose relief that would

- 14 -

extend or temporarily enjoin the July 1, 2022 candidate filing deadline for new parties found in N.C.G.S. § 163-98, such that Green Party candidates can submit their notice of candidacy in time to be included on the November 2022 general election ballot." *Id.*, ECF No. 51 at 4.

**G.  Despite the fact that its investigation into significant issues of fraud permeating NCGP's petitions was not complete, at its August 1 meeting NCSBE reversed course and recognized NCGP as a political party.**

58.    On July 20, after NCGP filed its lawsuit, NCSBE indicated that it would renew its consideration of NCGP's petitions at an August 1 meeting. Ex. K.

59.    On July 28, Plaintiffs' counsel sent a detailed letter to NCSBE laying out the significant evidence of fraud affecting NCGP's petition sheets and urging NCSBE to reject NCGP's petition. Ex. L.

60.    In public comments in the week before the meeting, NCSBE's spokesman, Pat Gannon, stated that the fraud in NCGP's petition sheets was "blatantly obvious." Ex. I at 9. And on July 29, the NCSBE's lead investigator declared under oath that "the matter is still an active criminal investigation." Ex. M ¶ 30.

61.    At the August 1 meeting, NCSBE explained that it had not completed its investigation; rather, its "[i]nvestigation continues and further attempts will be made to contact individuals who may have relevant information" about the fraudulent signatures on NCGP's petitions, including a referral to prosecutors "if warranted by the evidence." Ex. J at 9.

62.    NCSBE further explained that it "remains unknown" "[w]hether fraudulent signatures were submitted by the Michigan contractor," whose petition "sheets are not identifiable"; "[w]hether fraudulent signatures were submitted by any other contractors or petitioners paid by the Green Party," and "[w]hether the two collectors [Griffin and Mullins] submitted additional petition sheets that did not contain their name or initials." *Id.* at 8.

- 15 -

# Investigation Update

- It is known that two collectors submitted numerous fraudulent signatures. They also submitted numerous valid signatures.
  - Of sheets identifiable to these two collectors:
    - 624 accepted originally (signature matching by county boards likely has reduced that number now)
    - 848 rejected

- It remains unknown:
  - Whether fraudulent signatures were submitted by the Michigan contractor – those sheets are not identifiable, though the number of such signatures is believed to be around 109.
  - Whether fraudulent signatures were submitted by any other contractors or petitioners paid by the Green Party
  - Whether the two collectors submitted additional petition sheets that did not contain their name or initials



63.     NCSBE reported that even its incomplete investigation, and the signature matching it had instructed county boards to undertake, had significantly reduced the number of "validated" signatures in excess of the statutory requirement, so that the NCGP now had only 1,607 more than were required. *Id.* at 10.

64.     Plaintiffs counsel's July 28 letter laid out numerous additional indicia of fraud implicating thousands of additional signatures, including signatories who reported that they were misled into signing the petitions. Ex. L; *see also* Ex. O (attaching "52 declarations signed under penalty of perjury by signatories stating that they were misled by Green Party circulators and requesting that their signatures be revoked from the petition").

65.     NCSBE did not address the issue of signatories that were misled into signing NCGP's petitions at the August 1 meeting.

66. Despite admitting that its investigation had not yet uncovered the full scope of the "organized effort to falsify petition signatures" on NCGP's petitions, Ex. B at 7, NCSBE voted to recognize the NCGP as a new political party at its August 1 meeting.

67. Now that NCSBE has certified NCGP at its August 1 meeting, the federal court has invited the NCGP and NCSBE to submit a proposed consent order that would allow the NCGP to include candidates on the November 2022 ballot in time for the August 12 printing deadline, based on NCSBE's certification of NCGP. *Id.*, ECF No. 55. Plaintiff NCDP has objected to that relief. *Id.*, ECF No. 57.

## H. NCSBE violated its duty to "determine the sufficiency of petitions filed with it" and protect the integrity of its political processes.

68. In reviewing NCGP's petition, NCSBE had the statutory duty to "forthwith determine the sufficiency of petitions filed with it." N.C. Gen. Stat. § 163-96(a)(2).

69. In determining whether to recognize NCGP as a new political party under N.C. Gen. Stat. § 163-96(a)(2), NCSBE has "an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *McLaughlin v. N.C. Bd. of Elections*, 850 F. Supp. 373, 384 (M.D. N.C. 1994) (quoting *Bullock v. Carter*, 405 U.S. 134, 145 (1972)).

70. For this reason, courts have "regularly concluded that nominating petitions tainted by fraud or the strong appearance of fraud may be *discounted in their entirety* by an elections board." *Williams v. D.C. Bd. of Elections & Ethics*, 804 A.2d 316, 319 (D.C. 2002) (emphasis added) (collecting cases).

71. NCSBE reached the same conclusion in 2018 when it ordered a new election in North Carolina's Ninth Congressional District, explaining that where pervasive fraud exists, *"[i]t is neither required nor possible for the State Board to determine the precise number"* of individual fraudulent acts before taking remedial steps. Order ¶¶ 152-53, *In the Matter of: Investigation of*

- 17 -

*Election Irregularities Affecting Counties Within the 9th Congressional District*, NCSBE (Mar. 13, 2019) (emphasis added).

72. Here, NCSBE has acknowledged that NCGP's petitions were tainted by an "organized effort to falsify petition signatures," Ex. B at 7, including "blatantly obvious" fraud, Ex. I at 9, and that many signatories, such as Plaintiff Jones, were misled as to the petition's purpose in violation of N.C. Gen. Stat. § 163-96(b), Ex. D ¶¶ 3-4, 6; *see also* Ex. O at Ex. C. NCSBE is also involved in an ongoing criminal investigation into the fraud that permeates NCGP's petitions. June 30 Hr'g Video at 1:36:20-40.

73. The investigation has not been completed, and the full scope of the fraud remains an open question: NCSBE admitted at its August 1 meeting that it *remains unknown* whether any other individuals paid by the Green Party were involved in obtaining fraudulent signatures, or whether Griffin and Mullins submitted additional petition sheets that did not identify them as the collector. Ex. J at 8.

74. Given these extraordinary circumstances, NCSBE's decision to recognize the NCGP as a political party was premature and abdicated NCSBE's duty to protect its political processes from fraud and to "determine the sufficiency of petitions" under N.C. Gen. Stat. § 163-96(a)(2).

### CAUSES OF ACTION[4]

### COUNT I
### Violation of N.C. Gen. Stat. § 163-96

75. Plaintiffs hereby incorporate all previous paragraphs as if fully set forth herein.

76. NCSBE's decision to recognize NCGP as a political party before completing its investigation into what it had determined was widespread, organized fraud affecting NCGP's

---

[4] Each of the following claims is asserted by both Plaintiff NCDP and Plaintiff Jones.

petition sheets, and before it had determined the scope of the fraud, violated NCSBE's duty to "determine the sufficiency of petitions" submitted to it under N.C. Gen. Stat. § 163-96(a)(2).

77.    This Court has authority to review NCSBE's violation of General Statutes § 163-96(a)(2) under General Statutes § 163-22(*l*), which provides: "Notwithstanding any other provision of law, in order to obtain judicial review of any decision of the State Board of Elections rendered in the performance of its duties or in the exercise of its powers under this Chapter, the person seeking review must file his petition in the Superior Court of Wake County."

## COUNT II
### Violation of the North Carolina Administrative Procedures Act ("NCAPA")
### N.C. Gen. Stat. § 150B et seq.

78.    Plaintiffs hereby incorporate paragraphs 1 to 74 as if fully set forth herein.

79.    Section 150B-43 of the NCAPA provides that "[a]ny party or person aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to the party or person aggrieved by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute."

80.    NCSBE's recognition of NCGP was a final decision in a contested case because it was an agency proceeding that determined the rights of NCGP.

81.    To the extent that review is not available under General Statutes § 163-22(*l*), NCSBE's decision to recognize NCGP is therefore reviewable under the NCAPA.

82.    Given the impending August 12 ballot-printing deadline, it would be futile for Plaintiffs to attempt to exhaust any administrative remedies that may be available to it, as no such remedies could provide relief in time to affect whether NCGP's candidates will be included on the ballot in the 2022 general election.

- 19 -

83. A court reviewing a final decision of an agency under the NCAPA may "reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are: (1) In violation of constitutional provisions; (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Unsupported by substantial evidence. . .; or (6) Arbitrary, capricious, or an abuse of discretion." N.C. Gen Stat. § 150B-51(b).

84. Plaintiff NCDP is aggrieved by NCSBE's decision to recognize NCGP as a political party under N.C. Gen. Stat. § 163-96(a)(2), because that recognition impairs NCDP's ability to compete in North Carolina elections.

85. Plaintiff Jones is aggrieved by NCSBE's decision to recognize NCGP as a political party under N.C. Gen. Stat. § 163-96(a)(2), because Mr. Jones was misled into signing the NCGP's petition and has a continued desire to revoke his signature from that petition. Ex. D ¶¶ 4, 6–7.

86. NCSBE's decision to recognize NCGP despite its ongoing investigation into what it identified as widespread, organized fraud affecting its petition sheets was in excess of NCSBE's statutory authority because it violated NCSBE's statutory duty to "determine the sufficiency of petitions" submitted to it. N.C. Gen. Stat. § 163-96(a)(2).

87. NCSBE's decision to recognize NCGP despite its ongoing investigation into what it identified as widespread, organized fraud affecting its petition sheets was also unsupported by substantial evidence and arbitrary, capricious, or an abuse of discretion, because it recognized NCGP despite substantial continuing questions about the scope of the fraud affecting its petition sheets.

- 20 -

## COUNT III
## Action under the North Carolina Declaratory Judgment Act
## N.C. Gen. Stat. § 1-254

88.     Plaintiffs hereby incorporate paragraphs 1 to 87 as if fully set forth herein.

89.     The North Carolina Declaratory Judgment Act states: "Any person . . . whose rights, status or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the . . . statute, . . . and obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254.

90.     Parties may seek declaratory relief under the Declaratory Judgment Act "whether or not further relief is or could be claimed." *Id.* § 1-253.

91.     Declarations under the Declaratory Judgment Act "may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." *Id.*

92.     Plaintiff NCDP is a "person interested" and therefore entitled to a declaration under the Declaratory Judgment Act because its rights are directly and adversely affected by the NCSBE's interpretation of its duties to "determine the sufficiency of petitions filed with it" under N.C. Gen. Stat. § 163-96(a)(2).

93.     There is an actual and existing controversy between Plaintiff NCDP and the NCSBE over NCSBE's recognition of NCGP. Specifically, NCSBE's decision to certify NCGP without knowing the full scope of fraud affecting NCGP's petitions may result in candidates backed by an invalidly recognized political party being placed on the ballot based on fraudulently obtained petition signatures, directly harming Plaintiff's right to compete in fair elections under North Carolina law.

94.     Plaintiff NCDP is therefore entitled to a declaratory judgment that NCSBE's premature recognition of NCGP as a political party without knowing the full scope of fraud

- 21 -

affecting NCGP's petitions failed to comply with NCSBE's responsibilities under N.C. Gen. Stat. § 163-96(a)(2).

95.     Plaintiff Jones is a "person interested" and therefore entitled to a declaration under the Declaratory Judgment Act because his rights are directly and adversely affected by the NCSBE's premature recognition of NCGP despite an ongoing investigation into fraud in NCGP's petitions and the fact that NCGP misled him and other signatories into signing its petitions, and many signatories including Mr. Jones continue to express a desire to revoke his signature from NCGP's petition. Ex. D ¶¶ 4, 6–7; *see also, e.g.*, Ex. O at Ex. C.

96.     There is an actual and existing controversy between Plaintiff Jones and NCSBE over NCSBE's recognition of the NCGP. Specifically, the NCSBE's decision to certify NCGP without allowing Plaintiff Jones to revoke his signature from NCGP's petition, knowing that NCGP's petitions were affected by what the NCSBE identified as "widespread and organized fraud," and knowing that NCGP misled Plaintiff Jones and other signatories into signing NCGP's petitions, directly harms Plaintiff Jones's right to assembly, including his associational rights, under North Carolina law.

97.     Plaintiff Jones is therefore entitled to a declaratory judgment that NCSBE's premature recognition of NCGP as a political party without knowing the full scope of fraud affecting NCGP's petitions or without allowing Mr. Jones or other signatories to revoke their signatures after being misled into signing NCGP's petitions failed to comply with NCSBE's responsibilities under N.C. Gen. Stat. § 163-96(a)(2).

**COUNT IV**
**Violation of the Rights to Freedom of Speech and Association under Article I, Sections 12 and 14 of the North Carolina Constitution**

98.     Plaintiffs hereby incorporate paragraphs 1 to 97 as if fully set forth herein.

- 22 -

99.     Article I, § 12 of the North Carolina Constitution provides: "The people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the General Assembly for redress of grievances." N.C. Const. art. I, § 12. In North Carolina, the right to assembly encompasses the right of association. *Feltman v. City of Wilson*, 238 N.C. App. 246, 253, 767 S.E.2d 615, 620 (2014).

100.    Article I, § 14 of the North Carolina Constitution provides that "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." N.C. Const. art. I, § 14.

101.    The North Carolina Supreme Court has held that the "associational rights rooted in the free speech and assembly clauses of the state constitution" are "of utmost importance to our democratic system." *Libertarian Party of N.C. v. State*, 365 N.C. 41, 49, 707 S.E.2d 199, 205 (2011) (citing N.C. art. I, §§ 12, 14).

102.    Together, these sections of the North Carolina Constitution protect, at a minimum, at least the rights secured by the First Amendment to the U.S. Constitution. *See, e.g.*, *Libertarian Party of N.C. v. State*, 200 N.C. App. 323, 332 (2009) (construing both provisions and holding, "we cannot construe the provisions of the North Carolina Constitution to accord the citizens of North Carolina any lesser rights than those which they are guaranteed by parallel federal provisions in the federal Constitution"), *aff'd as modified*, 365 N.C. 41 (2011).

103.    The United States Supreme Court has held that free speech and associational rights of parties and voters include the right "to associate in the electoral arena to enhance their political effectiveness as a group." *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1980).[5]

---

[5] Plaintiff cites this and other federal cases only for their persuasive authority on the meaning of the North Carolina Constitution. Plaintiff does not allege any claim under the U.S. Constitution.

104.     Courts have also long recognized that "a corollary of the right to associate is the right *not* to associate." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (emphasis added). Thus, forced association, including with a "rival" political party, violates the right to associate protected by the First Amendment. *Id.* at 577.

105.     Plaintiff Jones and other members of NCDP (on whose behalf Plaintiff NCDP brings this suit) were misled into signing NCGP's petitions, whose circulators disguised the intent of the petition effort contrary to North Carolina law. N.C. Gen. Stat. § 163-96(b); *see also* Ex. O at Ex. C. Those voters sought to withdraw their signatures in support of NCGP once they learned the true nature of NCGP's petitions; NCSBE has apparently disregarded those requests.

106.     To date, even though NCSBE has been presented with significant evidence that NCGP's circulators did not comply with North Carolina law to inform signers of the purpose of the petition (including evidence from the NCSBE's own calls to voters, who personally informed the NCSBE they had been misled as to the purpose of the petition), NCSBE forged ahead and certified NCGP, apparently counting the signatures of Plaintiff Jones and likely countless other members of NCDP who would not have supported NCGP had they known the true purpose of the petition, or who would have wished to revoke their support when they learned it.

107.     NCSBE's apparent failure to give effect to Plaintiff Jones and other signers' withdrawal requests violates the North Carolina Constitution because it severely burdens Plaintiffs' and other signers' associational rights by forcing them to associate with a party and a petition that they do not want to be associated with. NCBE's refusal to recognize those requests is not narrowly tailored to advance a compelling state interest.

## COUNT V
## Petition for Writ of Mandamus

108.    As an alternative to the relief sought in Counts I to IV, Plaintiffs, by and through the undersigned attorneys, hereby petition this Court for the issuance of a writ of mandamus directed to Defendants.

109.    Plaintiffs hereby incorporate paragraphs 1 to 74 as if fully set forth herein.

110.    NCSBE has a clear legal duty to "determine the sufficiency of petitions filed" with it before recognizing a new political party. N.C. Gen. Stat. § 163-96(a)(2).

111.    NCSBE violated that duty when it recognized NCGP despite its ongoing investigation into what NCSBE identified as widespread, organized fraud affecting NCGP's petition sheets.

112.    Plaintiffs have a clear legal right to relief to redress NCSBE's violation of its express statutory duty.

113.    To the extent that Plaintiffs' claims in Counts I to IV do not provide complete relief, Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and:

a.    Prohibit NCSBE from recognizing NCGP as a new political party unless and until it has completed its investigation and had determined the scope of the fraud as part of its assessment under N.C. Gen. Stat. § 163-96(a)(2);

b.    Prohibit NCSBE from recognizing NCGP as a new political party unless and until it has completed an investigation to determine whether voters who signed NCGP's

- 25 -

petitions were properly informed as to the purpose of the petition as required under N.C. Gen. Stat. § 163-96(b).

c.     Declare, under N.C.G.S. § 1-253, *et seq.*, that NCSBE's recognition of the NCGP as a new political party fails to comply with NCSBE's responsibilities under N.C. Gen. Stat. § 163-96(a)(2);

d.     Declare NCSBE's refusal to remove voters who were misled into signing NCGP's petitions violates Plaintiffs' rights of speech and association under the North Carolina Constitution, and order the removal of the name of any such voter from the NCGP's petition total;

e.     Award Plaintiffs their costs and expenses, under applicable statutory and common law, including N.C. Gen. Stat. §§ 6-20 and 1-263; and

f.     Grant Plaintiffs such other and further relief as the Court deems necessary.

- 26 -

Dated: August 2, 2022

Respectfully submitted,

By: _____

Narendra K. Ghosh, NC Bar No. 37649
Burton Craige, NC Bar No. 9180
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27517
Telephone: 919.942.5200
nghosh@pathlaw.com
bcraige@pathlaw.com

Aria C. Branch*
David Fox*
Christopher D. Dodge*
Michael B. Jones*
Christina A. Ford*
Richard Medina*
Daniel Cohen*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
dfox@elias.law
cdodge@elias.law
mjones@elias.law
cford@elias.law
rmedina@elias.law
dcohen@elias.law

*Attorneys for Plaintiffs*

* *Pro hac vice* application forthcoming

- 27 -