IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-276-D

| | |
|---|---|
| NORTH CAROLINA GREEN PARTY, et al., ) ) ) Plaintiffs, ) ) v. ) ) NORTH CAROLINA STATE BOARD OF ELECTIONS, et al., ) ) ) Defendants. ) | **ORDER** |

On July 21, 2022, the North Carolina Green Party ("Green Party"), Anthony Ndege, Michael Trudeau, Matthew Hoh, Samantha Worrell, Samantha Spence, K. Ryan Parker, and Aaron Mohammed (collectively, "plaintiffs") filed an amended complaint seeking declaratory and injunctive relief arising from their efforts to have the Green Party certified as a new political party and to have their candidates placed on the ballot ahead of the November 8, 2022 general election [D.E. 27]. Plaintiffs named the North Carolina State Board of Elections and all five Board of Elections members and the Board of Elections executive director, in their official capacities, as defendants (collectively, the "Board" or "defendants"). Id. The same day, plaintiffs moved for a preliminary injunction and filed a memorandum and exhibits in support [D.E. 28, 30]. On July 29, 2022, defendants responded in opposition and filed exhibits in support [D.E. 51–53]. On August 2, 2022, plaintiffs replied [D.E. 58]. On July 17, 2022, before plaintiffs filed their amended complaint, the Democratic Senatorial Campaign Committee ("DSCC") and the North Carolina Democratic Party ("Democratic Party") (collectively, "intervenors") moved to intervene as defendants in this action and filed a memorandum in support [D.E. 15, 16].

On August 5, 2022, the court granted intervenors' motion to intervene and granted in part and denied in part plaintiffs' motion for a preliminary injunction [D.E. 64]. The court enjoined defendants in their official capacities from enforcing the July 1 candidate-filing deadline in N.C. Gen. Stat. § 163-98 against the Green Party and its candidates and ordered defendants in their official capacities to place Green Party candidates Matthew Hoh and Michael Trudeau on North Carolina's November 8, 2022 general election ballot so long as Hoh and Trudeau submitted their notice of candidacy, filing fee, and application to change party affiliation by Wednesday, August 10, 2022. See id. at 32–33. On August 8, 2022, intervenors appealed the preliminary injunction [D.E. 66], and moved for a stay of the preliminary injunction pending their appeal [D.E. 67]. As explained below, the court denies the intervenors' motion to stay.

I.

Intervenors ask the court to stay its preliminary injunction in this case while they appeal. See [D.E. 67]. "A stay is not a matter of right, even if irreparable injury might otherwise result . . . ." Virginian Ry. v. United States, 272 U.S. 658, 672 (1926). Instead, a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009) (cleaned up); see Virginian Ry., 272 U.S. at 672–73. As the moving party, the intervenors "bear[] the burden of showing that the circumstances justify an exercise of that discretion." Nken, 556 U.S. at 433–34. Courts examine four factors to determine whether to issue a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Id. at 434 (quotation omitted); see Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 141 S. Ct. 2485, 2487 (2021) (per curiam); Sierra Club v. U.S.

2

Army Corps of Eng'rs., 981 F.3d 251, 256 (4th Cir. 2020) (per curiam). The first two factors are the most important, and a minimal showing does not suffice. See Nken, 556 U.S. at 435. "There is substantial overlap between these and the factors governing preliminary injunctions, . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." Id. at 434 (citation omitted); see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

As for likelihood of success on the merits, intervenors have not made a "strong showing." Hilton v. Braunskill, 481 U.S. 770, 776 (2001); see Nken, 556 U.S. at 434. Intervenors argue that they are likely to succeed on the merits because, by their account, plaintiffs' failure to meet the July 1 certification deadline was "self-inflicted," plaintiffs never argued that the July 1 deadline was unconstitutional as applied to them, and the July 1 deadline is constitutional. [D.E. 67-1] 1. The record flatly contradicts all of these arguments.

First, plaintiffs met every statutory deadline. The Green Party submitted 22,530 signatures to the county boards of elections for validation by the 5:00 PM, May 17, 2022 deadline. See Am. Compl. [D.E. 27] ¶ 26. These signatures included the 15,472 signatures that the Board and the county boards ultimately validated. See [D.E. 57-1] 11. Thus, as of May 17, 2022, the Green Party had submitted to the county boards 1,607 more valid and timely signatures than the statutory requirement of 13,865 signatures. See id. And, when the Board failed to validate the Green Party on June 30 in time for the Green Party to meet the July 1 deadline, the Green Party still held a June 30 nominating convention pursuant to N.C. Gen. Stat. § 163-98. See Am. Compl. ¶ 31; N.C. Gen. Stat. §§ 163-96(a)(2), 163-98. At the convention, the party selected Matthew Hoh as its candidate for the United States Senate and selected Michael Trudeau as its candidate for North Carolina Senate District 16. See Am. Compl. ¶ 31. On July 1, 2022, Hoh and Trudeau submitted their applications

3

to change their party affiliation to the Green Party, and Anthony Ndege, the Green Party's chair, certified Hoh and Trudeau as the Green Party's candidates. See id. ¶ 32. Trudeau also submitted a notice of candidacy and his candidacy filing fee to the Wake County Board of Elections and the State Board. See id. On July 12, 2022, the Board's counsel sent Hoh and Trudeau forms for new party candidates. See id. ¶ 33. On July 13, 2022, Trudeau submitted the form to the Wake County Board of Elections. See id. The same day, Hoh submitted the form and the candidate filing fee to the Board. See id. The Board did not accept the latter submission. See id.

Intervenors claim the Green Party caused the Board's failure to certify in time for plaintiffs to meet the July 1 deadline. See [D.E. 67-1] 2–4. However, the Green Party met each of the deadlines assigned to it by statute to the extent that the Board allowed the Green Party to meet the deadline. It was the Board and the county boards of elections that failed to meet statutory deadlines. The Green Party submitted 22,530 signatures to the county boards for validation by the 5:00 PM, May 17, 2022 deadline. See Am. Compl. ¶ 26; [D.E. 57-1] 11. By statute, the county boards then had two weeks after the Green Party submitted its petitions to complete the verification process. See N.C. Gen. Stat. § 163-96(c).

Several county boards, including in some of the counties in which the largest number of signatures originated, failed to validate the signature petitions within the two-week window specified in N.C. Gen. Stat. § 163-96(c) or failed to properly review the petitions before certification. See [D.E. 64] 7–10. It was the Board and the county boards' logistical difficulties and failure to follow protocol that caused the delay. See id. The Board conducted an extensive investigation to ensure that the signatures were valid. See id. However, the Board did not conduct the bulk of this investigation until after the Board's June 30 vote not to certify the party. See id.

The Board recognized that the initial certification delay was not the Green Party's fault and

4

did not hold the delay against the Green Party so long as the Green Party had submitted the petitions to the relevant county board by 5:00 p.m. on May 17, 2022. See id.; Cox Decl. [D.E. 52] ¶¶ 11–12. Thus, although the Green Party made a timely initial submission to the Board on June 1, 2022, the Green Party supplemented its petitions on June 8, June 17, and June 24 with additional signatures after the county boards validated them. See Cox Decl. ¶ 14. Moreover, multiple counties failed to correctly conduct this initial review. Id. ¶ 26. In early July, the Board learned that some county boards of elections were not properly verifying petitions because they "did not check to see whether the signature itself resembled that of the voter." Id. This oversight potentially affected "large volumes" of the Green Party's signatures. Id.[1] On July 11, 2022, the Board's general counsel instructed county boards to conduct proper signature comparisons by July 29, 2022, if they had not already conducted them. See id. ¶ 27; [D.E. 52-10]. In fact, by July 18 the Board was still waiting for final review by the county boards that had not correctly completed their review the first time.

At this court's July 18, 2022 hearing the Board represented, through counsel, that "[s]ix or seven counties and many of them [] the largest counties where the most signatures came from" had not conducted proper signature review as of June 30, 2022, more than a month after the statutory timeline for doing so had passed. The Board stated that the delay was due to June primaries in several large counties, a lack of personnel, and multiple counties failing to actually complete the required review before certification. The county boards did not complete this review until July 29, nearly two months after the two-week statutory timeline. See [D.E. 64] 9. And far from the Green Party being the cause for the delay, the Board unequivocally stated at the hearing on July 18, 2022, "to be clear, the Green Party itself has cooperated with [the Board's] investigation at every step along

---

[1] For example, three counties, comprising approximately 40% of the Green Party's approved signatures, had not conducted the proper signature review. See Cox. Decl. ¶ 27.

5

the way that they have been requested, and there is no allegation from the state board that the Green Party itself committed any fraud."

Second, intervenors contend that "[n]owhere has [the Green Party] separately alleged that it would be a violation of its constitutional rights for [the Board] to apply the deadline in § 163-98 even if it later certified the party" and claim that plaintiffs' "preliminary injunction motion contains no argument concerning the application of § 163-98." [D.E. 67-1] 11. The intervenors are wrong. Plaintiffs have consistently argued that the Board's failure to timely certify the Green Party harms plaintiffs, in part, because it prevented certification of the Green Party's candidates by the July 1 deadline. See, e.g., Am. Compl. ¶¶ 29–34, 64, 69–71, 79, 86, 88, 91–92. Moreover, plaintiffs established "a relationship between the injury claimed in the party's motion [for a preliminary injunction] and the conduct asserted in the [amended] complaint." Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997) (citation omitted).

Plaintiffs filed their amended complaint and moved for a preliminary injunction before the Board certified the Green Party on August 1. Therefore, plaintiffs' amended complaint, motion for a preliminary injunction, and memorandum in support naturally included references to both the failure to certify before July 1 and the enforcement of the July 1 deadline. The record reflects that plaintiffs' constitutional as applied challenge to the failure to certify concerned both the certification decision itself and the timing of that decision which caused plaintiffs to miss the July 1 deadline. In their amended complaint, plaintiffs allege a violation of their First and Fourteenth Amendment rights and, inter alia, requested that the court "enjoin[ ] [the Board] from enforcing the July 1 filing deadline under § 163-98 as applied to Plaintiffs." Am. Compl. ¶¶ 84–88, 91–93. Plaintiffs' motion for a preliminary injunction requested, inter alia, that the court "enjoin Defendants from enforcing § 163-98 against Plaintiffs, insofar as that provision requires a new party to certify its candidates and

6

the candidates to file a notice of candidacy and application to change party affiliation, or take any other action, on or before July 1, 2022." [D.E. 28] 1–2. In plaintiffs' memorandum in support of their motion for a preliminary injunction, plaintiffs argued that they are "likely to prevail on the merits of their claims because § 163-96(a)(2) and § 163-98 (together, the "Challenged Provisions"), as applied by [the Board] here, cannot withstand scrutiny" under the framework for analyzing the constitutionality of state election laws. [D.E. 30] 10. Plaintiffs argued that the Board's "enforcement of the Challenged Provisions to deny [the Green Party] certification as a new party and exclude its candidates from North Carolina's general election ballot despite [the Green Party's] and its candidates' full compliance with their substantive terms severely burdens Plaintiffs' core First Amendment rights." Id. Plaintiffs repeatedly argued that "failure to certify [the Green Party] as a new party and its exclusion of [the Green Party's] candidates from the ballot" burdened their First and Fourteenth Amendment rights. Id. at 13; see, e.g., id. at 12–14. Thus, plaintiffs raised and the court properly addressed plaintiffs' First and Fourteenth Amendment as applied challenge to the July 1 deadline in N.C. Gen. Stat § 163-98.

Third, the intervenors' argument that the court erred in its constitutional analysis rests on its assertion that the Green Party's failure to comply with the July 1 deadline was "self-inflicted." [D.E. 67-1] 13. As discussed, plaintiffs did everything in their power to comply with the July 1 statutory deadline. It was the Board, the county boards, and possibly the intervenors themselves who prevented certification in time for the July 1 deadline. The court analyzed the burden of the July 1 deadline and the Board's interest in the July 1 deadline as applied here in its August 5, 2022 order.[2]

---

[2] Intervenors also neglect to address the court's analysis that the July 1 deadline was likely unconstitutional as applied in this case, where the delay in certification was the result of the Board's administration from May 17, 2022 through August 1, 2022. Instead, intervenors tilt at windmills about whether the July 1 deadline is a severe burden on its face. See [D.E. 67-1] 18–20.

7

The intervenors do not materially engage with that analysis and have not shown a likelihood of success on the merits.

As for irreparable injury, the court finds that this factor weighs strongly against issuing a stay. Intervenors argue that they will be injured by "forcing them to compete with a party that is not eligible for ballot access, requiring Intervenors to expend party resources they would otherwise use for other purposes." [D.E. 67-1] 15. However, on August 1, 2022, the Board determined that the Green Party was a valid political party eligible for ballot access and the court respects that conclusion. The Board's conclusion means that as of May 17, 2022, the Green Party had submitted a sufficient number of valid signatures to the county boards. See [D.E. 57-1] 11. The Green Party then submitted those signatures to the Board as soon as the county boards certified them. The Green Party went on to timely hold a nominating convention and to certify its candidates. Therefore, the Green Party is only "ineligible" insofar as the Board can validly apply the July 1 deadline to plaintiffs.

The intervenors' alleged irreparable injury is not that candidates from a party certified due to fraudulent or insufficient signatures will appear on the ballot; it is only the lack of enforcement of the July 1 deadline. However, enforcement of the July 1 deadline is a "legitimate regulatory interest" for North Carolina, not intervenors, and the Board admitted that it can add the two Green Party candidates to the ballot by August 12, 2022, and that doing so would be appropriate if it certified the Green Party on August 1, 2022. See [D.E. 64] 27; cf. N.C. State Bd. of Elections, State Board Recognizes Green Party as NC Political Party (Aug. 1, 2022) ("Ballot preparation begins in mid August, so there still is time to add Green Party candidates to the ballot if the court extends the statutory deadline."); [D.E. 51] 1 ("[I]f certification were to occur on August 1, relief from the Court allowing for the extension or temporarily enjoining of the candidate deadline would be appropriate

8

to ensure access to the November general election ballot."). Intervenors are not harmed by approval of two candidates close to the ballot printing deadline and have no interest in the July 1 deadline beyond a "generalized public interests in the proper application and enforcement of North Carolina's election laws." [D.E. 64] 17; cf. Lujan v. Defs. of Wildlife, 504 U.S. 555, 573–74 (1992). Moreover, it is plain for anyone who looks to see that the intervenors simply do not want to give voters the option to vote for the two Green Party candidates because the intervenors fear that some voters will vote for the two Green Party candidates instead of the Democratic candidates. See, e.g., [D.E. 28-1] ¶¶ 24, 28.

Intervenors' allegation that enjoining the July 1 deadline harms them is especially weak in light of intervenors' own role in the delay. This court has accepted the Board's certification result and has, at this stage, accepted the Board's investigation into the allegedly fraudulent signatures as a legitimate exercise of its statutory authority. However, it does not escape this court's notice that the intervenors instigated a significant amount of the delay. The intervenors "conducted their own investigation into problems with the [Green Party's] petitions." [D.E. 16] 14. Before the Board held its June 30, 2022 meeting, where it first considered the sufficiency of the Green Party's petitions, the intervenors submitted letters and attached declarations to the Board describing the intervenors' concerns about fraud in the Green Party's petitions. See id. at 15.[3] The intervenors submitted additional materials to the Board in advance of the Board's August 1, 2022 meeting. See [D.E. 50]. The law firm representing the intervenors also represents Wake County resident Michael Abucewicz and filed four complaints with the Board on his behalf against the chairs of four county boards of

---

[3] The intervenors filed one of these letters on the docket. See [D.E. 15-4]. Others are publicly available on the Board's website. See https://dl.ncsbe.gov/?prefix=State_Board_Meeting_Docs/%202022-06-30/Green%20Party%20Petition/ (last visited Aug. 9, 2022).

9

elections. See id. [D.E. 50-11] 1 n.1. When the Board received the complaints against the county board chairs, the Board forwarded them to the county board staff so that they could review their work for any errors in processing the Green Party's petitions. See Cox Decl. ¶ 22. "County board staff confirmed that most of the issues alleged in these complaints were not in fact errors but were instead properly assessed signatures." Id.[4] Additionally, plaintiffs allege that intervenors and their associates attempted to get petition signatories to withdraw their signatures and, in some cases, impersonated Board or Green Party personnel in the course of those efforts. See, e.g., [D.E. 27-1]; [D.E. 28-1] ¶ 28. Intervenors allege that the Green Party's inability to meet the July 1 deadline was self-imposed, but intervenors themselves clearly played a critical role in that delay and do not appear in this court with clean hands.

As for substantial injury to other parties, plaintiffs would be substantially injured if the court issued a stay. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Burdick v. Takushi, 504 U.S. 428, 441 (1992) (quotation omitted). The First and Fourteenth Amendments protect "the constitutional right of citizens to create and develop new political parties" to "advance[] the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences." Norman v. Reed, 502 U.S. 279, 288 (1992); see Kusper v. Pontikes, 414 U.S. 51, 56–57 (1973). Stated differently, "[t]he First Amendment, as incorporated against the states by the Fourteenth Amendment, protects the rights of individuals to associate for the advancement of political beliefs and ideas." S.C. Green Party v. S.C. State Election Comm'n, 612 F.3d 752, 755–56 (4th Cir. 2010). Importantly, not only

---

[4] The Johnston County board did invalidate a "handful" of signatures in response to Abucewicz's complaint. Cox Decl. ¶ 22.

do "[t]hese rights include the freedom for individuals to band together in political parties" but they also include the "right to choose their standard bearer in the form of a nominee." Id. at 756 (quotations omitted); see Cal. Democratic Party v. Jones, 530 U.S. 567, 574 (2000); Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 224 (1989). On August 1, 2022, the Board unanimously determined that the Green Party qualified as a new political party under N.C. Gen. Stat. § 163-96(a)(2). See [D.E. 54, 54-1]. And plaintiffs have demonstrated that they are likely to suffer irreparable harm to these important interests absent preliminary injunctive relief because Green Party candidates will not be able to run in the November 2022 general election. Therefore, the court finds that staying the preliminary injunction pending appeal would substantially injure other parties.

As for the public interest, the ability of "like-minded voters to gather in pursuit of common political ends" enlarges "the opportunities of all voters to express their own political preferences." Norman, 502 U.S. at 288. In light of the Board's August 1 certification of the Green Party, the public interest weights strongly in favor of including the Green Party candidates on the ballot and against a stay. Accordingly, because the court finds that all four factors weigh against issuing a stay, the court declines to stay the proceedings while the intervenors pursue their interlocutory appeal.

III.

In sum, the court DENIES intervenors' motion for stay [D.E. 67].

SO ORDERED. This 10 day of August, 2022.

JAMES C. DEVER III
United States District Judge