IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-276-D

NORTH CAROLINA )
GREEN PARTY, et al., )
 )
        Plaintiffs, )
 )
v. ) **ORDER**
 )
NORTH CAROLINA STATE )
BOARD OF ELECTIONS, et al., )
 )
        Defendants. )

On May 8, 2023, the North Carolina Democratic Party and the Democratic Senatorial Campaign Committee ("DSCC") (collectively, "intervenors") moved to dismiss this action as moot [D.E. 86] and filed a memorandum in support [D.E. 87]. That same day, the North Carolina State Board of Elections, the five Board of Elections members, and the Board of Elections executive director (collectively, "defendants") moved to dismiss this action as moot [D.E. 88] and filed a memorandum in support [D.E. 89]. On May 30, 2023, the North Carolina Green Party ("Green Party"), Anthony Ndege, Michael Trudeau, Matthew Hoh, Samantha Worrell, Samantha Spence, K. Ryan Parker, and Aaron Mohammed (collectively, "plaintiffs") responded in opposition to both motions to dismiss [D.E. 90, 91]. On June 13, 2023, defendants and intervenors replied [D.E. 92, 93]. As explained below, the court grants defendants' and intervenors' motions to dismiss and dismisses plaintiffs' action as moot.

I.

The North Carolina Green Party is a state affiliate of the Green Party of the United States. See Am. Compl. [D.E. 27] ¶ 6. The Green Party sought to place Matthew Hoh ("Hoh") and Michael Trudeau ("Trudeau") on the ballot as candidates in North Carolina's November 8, 2022 general election. See id. at ¶¶ 6, 8–9, 31–32. Although the Green Party was a recognized political party in North Carolina and had candidates on the 2020 general election ballot, the party failed to garner enough votes to qualify automatically as a political party entitled to place candidates on the 2022 general election ballot in North Carolina. See Cox Decl. [D.E. 52] ¶¶ 3–4. Thus, to recertify as a political party and to place Hoh and Trudeau on the ballot as candidates in the 2022 general election, the Green Party had to comply with N.C. Gen. Stat. §§ 163-96 and 163-98. See id. at ¶ 5; Am. Compl. ¶¶ 21–26; [D.E. 51] 5.

To meet the statutory requirements for certification in N.C. Gen. Stat. § 163-96(a)(2), the Green Party needed to submit 13,865 valid signatures to the Board of Electors ("the Board") by June 1, 2022. See Am. Compl. ¶ 26; [D.E. 52-1] (Green Party petition request form). The Green Party's petitions were due to the county boards of elections not later than 5:00 p.m. on May 17, 2022, so that the county boards of elections could validate the Green Party's petition signatures. See Cox Decl. ¶ 5; [D.E. 52-1].

In February 2021, the Green Party began a new petition drive to collect signatures to meet the May 17, 2022 deadline to submit signatures to the county boards of elections for validation. See Am. Compl. ¶ 25; Cox Decl. ¶ 5. Three issues emerged regarding the Green Party's petition drive. First, in October 2021, the Board received queries from county boards in roughly five counties because it appeared that the Green Party had submitted outdated petition sheets. See Cox Decl. ¶

2

6. The Board was unable to address that issue with the Green Party at the time. See id. at ¶¶ 7–8; [D.E. 52-2].

Second, in March 2022, the Green Party told the Board that they did not intend to seek party recognition in 2022 but instead were starting their petition drive for 2024. See Cox. Decl. ¶ 9; [D.E. 52-4]. In response, the Board changed the deadline in the SEIMS Petition Module for the Green Party to submit petitions to county boards to May 17, 2024. See Cox Decl. ¶ 9. When the Green Party later decided to seek certification in 2022, the reversion back to the May 17, 2022 deadline caused confusion. Some county boards accidentally validated signatures submitted after the May 17, 2022 deadline, mistakenly believing they were timely under the May 17, 2024 deadline. See id.

Third, the process to validate petition signatures submitted by the Green Party to county boards of elections was hampered by alleged evidence of fraudulent signatures and county board incompetence. Beginning in April 2022, the Board received notice from some county boards of elections that some of the petitions the Green Party submitted contained evidence of fraud. See Martucci Decl. [D.E. 53] ¶ 4. The Board continued to receive similar information in May and June from other counties. See id. at ¶¶ 8–9. Based on this information, the Board began to investigate the fraud allegations concerning the Green Party's petitions. See id. at ¶ 3. The Board's investigation found "what appeared to be noticeably fraudulent signatures, largely submitted from three counties, and bearing the signature marks of the same two individuals throughout." Id. at ¶ 11. After meeting with Green Party leadership in June 2022, the Board narrowed its investigation to two persons of interest and possibly a third. See id. at ¶ 19. These persons of interest apparently were

3

Case 5:22-cv-00276-D-BM   Document 94   Filed 08/07/23   Page 3 of 11

connected to consulting firms or individuals that the Green Party hired to assist with signature gathering. See id. at ¶¶ 13, 17–20, 25.[1]

As part of its investigation, the Board determined that "the entire universe of possibly fraudulent signatures was believed to be" 2,653 signatures based on 1,382 signatures collected by the three persons of interest and 1,271 signatures collected by a consulting firm. Id. at ¶ 25. "Board staff examined roughly 3,560 submitted petition pages" to try to identify signatures that fell within the group of possibly fraudulent signatures. Id. at ¶ 21. The Board ultimately identified 1,472 signatures gathered by persons of interest in the investigation. See id. at ¶¶ 23, 25. Of those signatures, the Board accepted 624 signatures and rejected 848 signatures. See id. at ¶ 23.

Board staff also contacted more than 200 voters to ask whether they signed the Green Party petition. See id. at ¶ 24. Of those that responded, "28 individuals did not sign the petition, 12 did not remember whether they signed, 10 did sign it, and 4 thought they were signing a petition for something else." Id.

The process to validate signatures submitted by the Green Party was also delayed by county boards of elections not validating the signature petitions within the two-week window specified in N.C. Gen. Stat. § 163-96(c) or not properly reviewing the petitions. As for not meeting the two-week deadline, the Board did not hold the delay against the Green Party so long as the Green Party had submitted the petitions to the relevant county board by 5:00 p.m. on May 17, 2022. See Cox Decl. ¶¶ 11–12. Thus, although the Green Party made a timely initial submission to the Board on June 1, the Green Party supplemented its petitions on June 8, June 17, and June 24 with additional signatures after the county boards validated them. See id. at ¶ 14. Board staff reviewed the petitions

---

[1] At the July 18, 2022 status conference, counsel for the Board told the court that there is no allegation from the Board that the Green Party itself committed any fraud.

as they received them. See id. at ¶ 21. In early July, the Board learned that some county boards of elections were not properly verifying petitions because they "did not check to see whether the signature itself resembled that of the voter." Id. at ¶ 26. This oversight potentially affected "large volumes" of the Green Party's signatures. Id.[2] On July 11, 2022, the Board's general counsel instructed county boards to conduct proper signature comparisons by July 29, 2022, if they had not already done so. See id. at ¶ 27; [D.E. 52-10].

The Green Party submitted 22,530 signatures to the county boards of elections for validation. See Am. Compl. ¶ 26. As discussed, the county boards of elections reviewed those signatures for (1) signatures on outdated petition pages; (2) signatures submitted after the May 17, 2022 deadline; (3) signatures showing alleged evidence of fraud; and (4) signatures otherwise not bearing a reasonable resemblance to the corresponding signature in the voter record. See Cox. Decl. ¶¶ 17–20.

On June 30, 2022, the Board met and voted 3 to 2 not to certify the Green Party as a new political party under N.C. Gen. Stat. § 163-96(a)(2) because of the Board's on-going investigation of alleged fraud. See Am. Compl. ¶¶ 63–74; [D.E. 52-8]; [D.E. 51] 3 & n.2.

The same day, notwithstanding the Board's vote, the Green Party held its nominating convention pursuant to N.C. Gen. Stat. § 163-98. See Am. Compl. ¶ 31. At the convention, the party selected Matthew Hoh as its candidate for the United States Senate and selected Michael Trudeau as its candidate for North Carolina Senate District 16. See id. On July 1, 2022, Hoh and Trudeau submitted their applications to change their party affiliation to the Green Party, and Anthony Ndege, the Green Party's chair, certified Hoh and Trudeau as the Green Party's candidates. See id. ¶ 32. Trudeau also submitted a notice of candidacy and his candidacy filing fee to the Wake County

---

[2] For example, three counties comprising approximately 40 percent of the Green Party's approved signatures had not conducted the proper signature review. See Cox. Decl. ¶ 27.

5

Board of Elections and the State Board. See id. On July 12, 2022, the Board's counsel sent Hoh and Trudeau forms for new party candidates. See id. at ¶ 33. On July 13, 2022, Trudeau submitted the form to the Wake County Board of Elections. See id. The same day, Hoh submitted the form and the candidate filing fee to the Board. See id. The Board did not accept Hoh's submission. See id.

On July 14, 2022, plaintiffs filed this action against the Board. See [D.E. 1]. On July 17, 2022, before plaintiffs filed their amended complaint, intervenors moved to intervene as defendants in this action and filed a memorandum in support [D.E. 15, 16]. On August 5, 2022, the court granted intervenors motion to intervene [D.E. 64].

On July 21, 2022, plaintiffs filed an amended complaint seeking declaratory and injunctive relief arising from their efforts to have the Green Party certified as a new political party and to have their candidates placed on the ballot for the November 8, 2022 general election [D.E. 27].

On July 20, 2022, the Board noticed an August 1, 2022 meeting at which the Board anticipated reconsidering the Green Party's petition for certification as a political party. The same day, the court accepted plaintiffs' and defendants' proposed briefing schedule and scheduled an August 8, 2022 hearing on plaintiffs' motion for a preliminary injunction. See [D.E. 26]. By scheduling the hearing on August 8, 2022, the court allowed the county boards to complete their review by the Board's July 29 deadline and allowed the Board to hold its August 1 meeting and to reconsider the sufficiency of the Green Party's petition for certification as a political party.

After completing their review, the county boards validated 15,472 signatures. See [D.E. 57-1] 11. Thus, as of July 29, 2022, the county boards of elections found that the Green Party submitted 1,607 more signatures than the statutory requirement of 13,865 signatures. See id. On August 1, 2022, the Board met and voted unanimously to certify the Green Party as a new political party. See [D.E. 54]. The Board determined that the Green Party complied with the statutory requirements in

6

N.C. Gen. Stat. § 163-96(a)(2) by timely submitting more than the required number of valid signatures and certified the Green Party as a political party eligible to have its candidates on the November 2022 general election ballot. The Board immediately informed the Green Party of its determination. See [D.E. 54-1].

After the Board certified the Green Party as a North Carolina political party, the court issued an order forecasting that plaintiffs' request that the court order the Board to certify the Green Party appeared to be moot. See [D.E. 55] 2. The court also noted that plaintiffs and defendants appeared to agree that if the Board certified the Green Party, injunctive relief to ensure the Green Party's candidates appeared on the ballot would be appropriate. See id. The court ordered plaintiffs and defendants to file a proposed consent order resolving that issue or to file competing proposed orders if they could not agree. See id. at 3. They did not agree, and each filed a proposed order on August 3, 2022. See [D.E. 61-1, 63].

On August 5, 2022, the court enjoined defendants in their official capacities from enforcing the July 1 candidate-filing deadline in N.C. Gen. Stat. § 163-98 against the Green Party and its candidates and ordered defendants in their official capacities to place Green Party candidates Hoh and Trudeau on North Carolina's November 8, 2022 general election ballot. See [D.E. 64]. Defendants appealed [D.E. 65].

On August 8, 2022, defendants filed an emergency motion to stay [D.E. 67]. On August 10, 2022, the court denied defendants' emergency motion to stay [D.E. 74]. On August 11, 2022, the United States Court of Appeals for the Fourth Circuit denied defendants' emergency motion for stay pending appeal. See [D.E. 75]. On August 30, 2022, the Fourth Circuit dismissed the case pursuant to Federal Rule of Appellate Procedure 42(b). See [D.E. 76].

7

Case 5:22-cv-00276-D-BM Document 94 Filed 08/07/23 Page 7 of 11

Hoh and Trudeau appeared on the November 2022 ballot. On November 8, 2022, the election was held. Hoh was not elected to the United States Senate, and Trudeau was not elected to the North Carolina Senate.

II.

Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the "court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction. See, e.g., Steel Co., 523 U.S. at 103–04; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

"Federal courts have no power to hear moot cases . . . ." Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006); see United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537 (2018); Already, LLC v. Nike, Inc., 568 U.S. 85, 90 (2013). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonians for Official English v. Arizona, 520 U.S. 43, 67 (1997); see Sanchez-Gomez, 138 S. Ct. at 1537; Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160 (2016); Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 609–10 (2013); Already, LLC, 568 U.S. at 91; Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71–73 (2013); United States v. Juvenile Male, 564 U.S. 932, 936 (2011) (per

8

curiam); Alvarez v. Smith, 558 U.S. 87, 92 (2009). A case generally "becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Nakell v. Att'y Gen. of N.C., 15 F.3d 319, 322 (4th Cir. 1994) (quotations omitted); see Chafin v. Chafin, 568 U.S. 165, 172 (2013); Already, LLC, 568 U.S. at 91; City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). A court cannot grant declaratory relief on a moot claim. See Nestler v. Bd. of Law Exam'rs of N.C., 611 F.2d 1380, 1382 (4th Cir. 1980).

Only in exceptional circumstances will a court hear an otherwise moot case, such as where a claim is "capable of repetition, yet evading review." Los Angeles v. Lyons, 461 U.S. 95, 109 (1983); see Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (2016); Spencer v. Kemna, 523 U.S. 1, 17 (1998); S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911). A controversy is capable of repetition, yet evading review when: "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam); see Alvarez, 558 U.S. at 93–94; Sierra Club v. Martin, 110 F.3d 1551, 1554 (11th Cir. 1997).

Plaintiffs' claims are moot. In plaintiffs' amended complaint, plaintiffs sought "a declaratory judgment holding that [the Board]'s failure to certify [the Green Party] as a new political party pursuant to § 163-96(a)(2) is unconstitutional and that § 163-96(a)(2) is unconstitutional as applied" and "an order directing [the Board] to certify [the Green Party] as a new political party entitled to place its candidates on North Carolina's November 8, 2022 general election ballot pursuant to § 163-96(a)(2), with sufficient time to ensure the candidates' inclusion on the ballots to be prepared in mid-August 2022, and enjoining [the Board] form enforcing the July 1 filing deadline under § 163-98 as applied to Plaintiffs." [D.E. 27] 25. On August 1, 2022, the Board unanimously voted to

9

certify the Green Party as a political party, rendering "that portion of plaintiffs' requested relief ... moot," as the court recognized. See [D.E. 64] 12. After August 1, 2022, only "plaintiffs' request that the court enjoin the application to it of the July 1 candidate-filing deadline under N.C. Gen. Stat. § 163-98 and order defendants to place [the] Green Party candidates Matthew Hoh and Michael Trudeau on North Carolina's November 8, 2022 general election ballot" remained. Id. On August 5, 2022, the court granted that relief. Id. at 32–33. North Carolina held its general election on November 8, 2022, with Hoh appearing on the Green Party line for United States Senate and Trudeau appearing on the Green Party line for North Carolina Senate District 16. See Election Results Dashboard, N.C. State Bd. of Elections, https://www.ncsbe.gov/results-data/election-results/about- election-results-dashboard (last visited Aug. 7, 2023). Thus, plaintiffs have received the relief they sought, and plaintiffs' claims are moot. See, e.g., Alvarez, 558 U.S. at 93–94; Weinstein, 423 U.S. at 149; Williams v. Ozmit, 716 F.3d 801, 809–10 (4th Cir. 2013); Leifert v. Strach, 404 F. Supp. 3d 973, 987 (M.D.N.C. 2019); Vote No on Amend. One, Inc. v. Warner, 400 F. Supp. 3d 504, 511 (S.D.W. Va. 2019).

In opposition, plaintiffs argue that their claims are capable of repetition, yet evading review and thereby not moot. See [D.E. 90] 8–13; Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir. 2005) ("Challenges to election laws are one of the quintessential categories of cases which usually fit this prong because litigation has only a few months before the remedy sought is rendered impossible the occurrence of a relevant election."); see also Morse v. Republican Party of Va., 517 U.S. 186, 235 n.48 (1996); Speer v. City of Or., 847 F.2d 310, 311 (6th Cir. 1988). Plaintiffs, however, received the relief they requested for the 2022 election. The Board's unanimous decision certifying the Green Party as a new political party and an injunction ordering the Board to certify the Green Party as a new political party entitled to place its candidates on the ballot for the November

10

8, 2022 general election moots plaintiffs' claims. See Eden, LLC v. Justice, 36 F.4th 166, 169–70 (4th Cir. 2022); Lighthouse Fellowship Church v. Northam, 20 F.4th 157, 162–66 (4th Cir. 2021); Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017). Moreover, the Green Party is a certified political party in North Carolina through the 2024 election and will remain a certified so long as the Green Party candidate for North Carolina Governor obtains two percent or more of the vote in the next contest for Governor of North Carolina, or the Green Party candidate for President of the United States appears on the general election ballot of 70 percent or more of the states. See N.C. Gen. Stat. §§ 163-96(a)(1) and (3). Accordingly, because plaintiffs received the relief requested for the 2022 election, the 2022 election was held with the two Green Party candidates on the ballot, and no exceptions to the mootness doctrine apply, the court dismisses as moot plaintiffs' action. See, e.g., Sanchez-Gomez, 138 S. Ct. at 1537–42; Already, LLC, 568 U.S. at 90–91, 102; Arizonians for Official English, 520 U.S. at 67–80; Juvenile Male, 564 U.S. at 936–38; Alvarez, 558 U.S. at 92–97; Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631–34 (1979); Speer, 847 F.2d at 311.

III.

In sum, the court GRANTS defendants' and intervenors' motions to dismiss [D.E. 86, 88] and DISMISSES as moot plaintiffs' action. Plaintiffs may seek costs and attorneys' fees in accordance with 42 U.S.C. § 1988, the Federal Rules of Civil Procedure, and this court's local rules. See Stinnie v. Holcomb, No. 21-1756, 2023 WL 5005394, at *7–13 (4th Cir. Aug. 7, 2023) (en banc).

SO ORDERED. This 7 day of August, 2023.

                                      */s/ Dever*
                                      JAMES C. DEVER III
                                      United States District Judge